**USA F/u/B/o VULCAN MATERIALS, Counter Plaintiff-Appellee Cross-Appellant,**

v.

**VOLPE CONSTRUCTION et al., Counter Claimants Defendants-Appellants Cross-Appellees.**

No. 78–2891.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1980.

Marc Cooper, Miami, Fla., for Volpe, Travelers, U.S. Fidelity and Bob Young.

Patton, Kanner, Nadeau, Segal Zeller & La Porte, Dennis G. King, Miami, Fla., for Vulcan Materials.

Before HILL, HATCHETT and TATE, Circuit Judges.

TATE, Circuit Judge:

This controversy arises in the context of a contract for furnishing materials to a United States government project in Dade County, Florida. The plaintiff and counter-

defendant, Bob Young, Inc.,[1] seeks reversal of the trial court's judgment, which: (a) awarded $17,364.82 to Vulcan Materials Company, the defendant and counterplaintiff; and (b) denied Young recovery against Vulcan on its breach of contract claims. Vulcan cross-appeals from the denial of both prejudgment interest and attorneys' fees. We affirm the trial court's award of judgment in favor of Vulcan in both respects, but we reverse the denial to Vulcan of prejudgment interest and attorney's fees.

### Capsule Statement of Central Issue

The parties agree that, if applicable, the provisions of the Uniform Commercial Code, Fla.Stat. §§ 671.101 et seq. (1965), govern the transaction. In all respects relevant to the present transactions, the Florida provisions are identical to those of the Uniform Commercial Code (1962).

Young, the appellant, contends that the district court failed to make the requisite factual findings necessary to reject its claim that it is entitled to damages under the UCC for Vulcan's anticipatory repudiation (breach) of the contract, Fla.Stats. §§ 672.-610, 672.711, 672.714, UCC §§ 2-610, 2-711, 2-714, or alternatively for failure to perform a severable and non-waived portion of an installment contract, Fla.Stats. § 672.-612, UCC § 2-612. Specifically, Young argues that the district court failed to find whether the contract was breached by Vulcan through its inability to deliver the material according to the contract specifications, or instead by Young through its failing to accept Vulcan's sand as meeting the contract specifications (although nevertheless unsuitable to Young for the purpose for which bought). Young suggests that,

therefore, a remand is necessary to make the necessary findings.

The district court found it unnecessary to reach these issues. In this bench trial, the court made findings that, before performance of the contract commenced, the parties mutually rescinded the contract after realizing that the materials under order did not meet Young's needs. Under this finding, there was no breach of the contract by either party and the (lack of) meeting of the minds on the precise specifications was irrelevant. As summarized at 2 Anderson, Uniform Commercial Code, § 2-703:39, p. 349 (2d ed. 1971):

> The fact that this "remedy" [of rescission] is not specifically listed in the Code is not controlling for the Code lists only the unilateral remedies of each party, that is, those which the seller may by himself exercise, and those which the buyer by himself may invoke. As mutual rescission is a bilateral agreement, it is manifest that it would not be listed as a unilateral remedy. Furthermore, the provision for the preservation of principles of contract law generally [citing UCC § 1-103; see Fla.Stats. § 671.103] and the recognition of an unlimited power to modify a sales contract [citing UCC § 2-209(1); see Fla.Stats. § 672.209(1)[2]] amply confirm the conclusion that the parties to the sales contract may terminate the contract by mutual rescission.

### Facts and Findings by the Trial Court

As we understand Young's argument, it does not dispute as incorrect the factual findings of the trial court (insofar as those made); in any event, they are not clearly erroneous. Young's contention, rather, is

---

1. We will designate the parties in the same manner as the trial court. Bob Young, Inc. first sued Vulcan under diversity jurisdiction for damages resulting from breach of contract. One day later Vulcan filed suit under the Miller Act, 40 U.S.C. §§ 270a–270d, for payment of materials previously delivered to Young. Vulcan counter-claimed in Young's suit for lost profits resulting from Young's breach of the contract and for the amount of the price of the materials delivered. Volpe Construction Co., Travelers Indemnity Co., and U.S. Fidelity and

Guaranty Co. are co-judgment debtors and appellants with Bob Young, Inc.

2. Insofar as Young argues that any modification needs to be in writing, we note that, even if so, the failure to reduce a modification to writing may nevertheless operate as a waiver. Fla. Stats. § 672.209(4), UCC § 2-209(4). (The trial court, of course, found that the contract was entirely rescinded by mutual consent, not merely modified.)

that the district court erred as a matter of law in its choice of the principles used to decide the parties' duties under those facts, and that it failed to make findings necessary to decide this case on the basis of the legal principles properly applicable.

The dispute arises out of a contract between Vulcan and Young whereby Vulcan was to supply Young with 220,000 tons of sand fill and 40,600 tons of road rock, at given prices of $1.16 per ton for "lake sand fill" and $1.28 per ton for road rock. Young was the earthwork and paving subcontractor to a general contractor, Volpe Construction Company, Inc., for a federal postal facility in Florida.[3] The contract between Volpe and Young incorporated the government specifications applicable to the project. In the contract at issue, Vulcan contracted with Young to supply lake sand fill and DOT rock for the facility. This sales contract was signed on September 3, 1976. The precise standards that the materials would have to meet to enable Young to comply with its contract with Volpe were not given to Vulcan or the testing laboratory until September 16, 1976.[4] As a result of the soils classification tests conducted on that date, it became clear that the lake sand fill that Young had contracted to purchase from Vulcan would not meet the specifications for the postal facility project and a representative of Vulcan immediately so informed Young. The parties to the original contract therefore discussed the possibility of Vulcan supplying another product in whatever quantity it had available, if one could be found that met the government standards.

In the view of the district court, this series of events indicated that "the parties thereupon by mutual agreement rescinded the original agreement by their acts and conduct." The district court considered the subsequent ad hoc sales of two products that had not been the subject of the sales order, manufactured sand screenings and shot rock, to be the consequence of new agreements.

*Rescission of the Contract*

Young urges on appeal that any rescission of the original contract resulted from Vulcan's anticipatory breach of the contract by its disclosure to Young that the materials under order would not meet the specifications. Thus, under the relevant provisions of the Uniform Commercial Code, adopted in Florida as Florida Statutes § 671.101 *et seq.*, Young had the right to accept substitute materials without jeopardizing its right to damages for the initial breach of contract. Fla.Stats. §§ 672.711, 672.610, 672.106, 672.720; UCC §§ 2–711, 2–610, 2–106, 2–720. Young maintains that, therefore, the trial court erred as a matter of law by not awarding damages in favor of Young. Young suggests that a part of the trial court's error was its failure to make any finding with respect to the breach of the contract by either party and argues that the case must, therefore, be remanded for further findings to resolve this issue.

Young's argument assumes that rescission was necessarily premised on one party's breach of the contract[5] and that the

3. Travelers Indemnity Company was the Miller Act surety for Volpe and United States Fidelity and Guaranty Company (U.S.F. & G.) was Young's surety.

4. At the time this contract was signed, the parties discussed in general terms the need for the materials to meet government specifications under Military Standard 619 for the sand for the construction project. As the parties stipulated, Young did not deliver the actual specifications until nearly two weeks later, and Vulcan's lake sand fill was not tested to ascertain its compliance with the *government* contract specifications until that time. Upon testing the parties learned that Vulcan's lake

sand fill, although meeting Military Standard 619 would not satisfy the government specifications, (which included only eight out of the sixteen grades of the Military Standard for the fill).

5. The argument that Vulcan breached the contract is also based on the allegation that *Vulcan* contracted to meet the government specifications for the project (as had Young), another matter on which the trial judge made no explicit finding. Vulcan points out that the sales order identified a particular product by code number (009 lake sand) and asserts that the reference to specifications in the printed form

trial judge's failure to make a finding as to breach is therefore a critical omission. Such a finding was necessary, according to Young, because the UCC abrogated any former election-of-remedies doctrine and now permits the innocent party to a breached contract to rescind the contract, accept substitute materials in mitigation of damages, and claim damages for such loss as is nevertheless incurred. Fla.Stats. § 672.711, UCC § 2–711.

Young's argument overlooks that, as the district court concluded, a contract may be mutually rescinded by common agreement, as the district court found in findings which are not clearly erroneous. The Uniform Commercial Code does not regulate mutual rescission by the parties, see 2 Anderson, Uniform Commercial Code 349 (2d ed. 1971), quoted above in text. Thus, the general contract law of Florida rather than the UCC provides the applicable legal principles.[6] American contract law recognizes that an executory bilateral contract may freely be terminated by mutual rescission, 5A Corbin on Contracts, § 1236 (1964), 6 Corbin on Contracts, § 1316 (1962), Calamari and Perillo, The Law of Contracts, § 21–2 (2d ed. 1977), Restatement of Contracts, §§ 406, 407, 409 (1932), and Florida law is in accord, see, e. g., Cox v. Grose, 122 So. 513 (Fla.1929); Holmberg v. Hardee, 90 Fla. 787, 108 So. 211 (1925); McMullen v. McMullen, 185 So.2d 191 (Fla.App. 2d Dist. 1966); Ganaway v. Henderson, 103 So.2d 693 (Fla.App. 1st Dist. 1958).

The rights of Vulcan and Young under the contract could thus be terminated not only by breach (and the appellant Young's contentions depend upon a finding of breach ), but also by mutual rescission. The district court's factual findings, which are not clearly erroneous, are that—"after realizing that Young, on the one hand, would be in default on its contract with Volpe, and [Vulcan], on the other, without sufficient knowledge of the requirement for supplying a material [sand] that would satisfy the requirements [of Young to provide sand for its construction contract of the requisite specifications] of Military Standard 619 and 619B . . . the parties thereupon by mutual agreement rescinded the original agreement by their acts and conduct." The court further noted that, after the Vulcan sand was found unsuitable for Young's needs, the parties agreed that "at the option of Young, the party could look elsewhere [than to Vulcan] for a substitute [sand]," but "Young elected to accept" a substitute from Vulcan at a different price in partial satisfaction of its needs for the limited amount Vulcan could supply. The district court characterized the delivery of the substitute material as "upon the basis of a new agreement under which a limited quantity was contracted to be supplied." Tr. 401, 402.

On the record before us, the trial judge's silence as to breach is clearly an unarticulated finding that this rescission was *not* breach-based. In fact, the choice of the word "rescinded" in the factfindings and "rescinded" and "terminated" in the conclusions of law, rather than "cancelled", indicates the non-breach-based nature of the end of the sales contract between Vulcan and Young.[7] The finding of mutual error

---

is intended to refer to the product's compliance with the characteristics described by the code number. The interpretation offered by Vulcan presents an internally consistent contract, while that urged by Young would make the contract self-contradictory in light of test results showing that 009 lake sand (seemingly specified by contract) could not satisfy the government project specifications. It was not necessary for the trial court to choose one of these interpretations, however, in light of its finding, discussed in text *infra*, that the parties *mutually rescinded* the contract, whatever it bound Vulcan to do prior to rescission.

6. *See* Fla.Stats. § 671.103, UCC § 1–103:

Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

7. See Fla.Stats. § 672.209, UCC § 2–209, comments 3 & 4, Calamari & Perillo, Handbook on the Law of Contracts, § 21–2, p. 758 (2d ed. 1977). "Cancellation" is the only of these terms under the UCC that indicates that a

as to the sand specifications, coupled with those establishing the times when the sales order was signed and when the actual military standards were first given to Vulcan, is in effect a finding that the parties were *mistaken* at the time of contracting as to whether the quality of the product described by code number in the Vulcan sales order would meet the government standards applicable to the project for which it was being purchased. Aside from demonstrating the reason why the parties mutually rescinded the contract, it indicates a reason why either party might have secured its judicial rescission.[8]

■ Thus we conclude on review that underlying the trial court's conclusion of mutual rescission is the factfinding that the parties were mutually mistaken in assuming the compliance of Vulcan's lake sand fill, product code 009, with the required government specification,[9] and that they therefore mutually decided to rescind the contract. The record supports this finding.

■ Nor is the conclusion of mutual rescission coupled with a denial of damages to both parties at odds with the UCC, as Young contends, since the provisions cited by the plaintiff-appellant merely preserve the right to damages in any rescission that follows a *breach* of contract. They do not preclude rescission under circumstances in which no breach has occurred.

---

breach lead to the end of the contract. Fla. Stats. § 672.106, UCC § 2–106. The code is also careful to preserve the *possibility* of remedies for breach when a *party* uses the term "rescind." Fla.Stats. § 672.720, UCC § 2–720. This protection against the consequences of inadvertent or uncounselled wording by a party is not support for an assumption that the district judge's use of the term "rescind" is anything less than technically precise.

8. The Uniform Commercial Code, § 1–103, Fla. Stats. § 671.103, quoted in footnote 6, retains the prior law as to the effect of such mistakes, including the right to have a contract rescinded when the mistake infects a basic assumption of the contract. 3 Corbin, Corbin on Contracts, § 614, p. 728 (1960); 13 Williston on Contracts, § 1544, pp. 95–96 (3d (Jaeger) ed., 1970). *See, e. g.,* Williston, p. 96:

## Young's Claim for Damages For Non-delivery of the Rock

Young alternatively argues that any rescission of the contract affected only the lake sand fill portion of the sales order, that Vulcan's obligation to sell DOT rock under the second portion of the order survived, and that the district court therefore erred in not awarding damages for breach of the contract to sell rock. Assuming that the sales order in question was an installment contract, Young bases its argument on the statutory provision that breach of any one portion or installment of such a contract does not result in cancellation of the entire contract unless (1) the value of the contract as a whole was substantially impaired by the breach and (2) the aggrieved party made overt its intent to cancel the entire agreement. UCC § 2–612, Fla.Stats. § 672.-612.

Pretermitting whether Young correctly classifies the present agreement as an installment contract, this argument depends upon Young's erroneous assumption that one of the parties breached the original agreement. The district court, however, found the entire contract was rescinded by mutual consent, and its factfinding is not clearly erroneous.

## Prejudgment Interest

■ As counterplaintiff, Vulcan was awarded $17,364.82 for substitute materials delivered to Young pursuant to the new

---

[W]here the parties assumed a certain state of facts to exist, and contracted on the faith of that assumption, they should be relieved from their bargain if the assumption is erroneous, and the materiality of the state of facts is weighty evidence of the assumption.

9. While the appellants may note that this and other of the findings we discuss today are not spelled out very explicitly, additional or amended findings were never sought by a Rule 52(b) motion. The trial judge was evidently prepared to make any needed clarifications had they been sought: "The following findings of facts and conclusions of law will be entered into the record, and if requested by either party, they will be expounded upon and reduced to writing and made available." Tr. 399.

agreement, for which Young did not pay. Vulcan cross-appeals the judgment of the trial court insofar as it failed to award prejudgment interest or attorneys' fees. The defendant, as counterplaintiff, sought such interest in its Answer, Affirmative Defenses, and Counterclaim. In its oral findings and its judgment, the trial court was silent as to the plea for prejudgment interest,[10] and it subsequently denied without explanation Vulcan's motion to award such interest by amendment to the judgment.

Young opposes this claim, reciting the Florida rule that prejudgment interest is awarded as a matter of right on liquidated claims only, and contending that the amount it owed was unliquidated because of its own claims against Vulcan for breach of contract. The Florida Supreme Court rejected a similar argument, when it announced that "an unliquidated counterclaim, even when established [which Young's ultimately was not], does not affect the right to interest prior to judgment on the amount found to be due on a liquidated or determinable claim, since the debtor may not defeat the creditor's right to interest on such a claim by setting up an unliquidated claim as a setoff." *Manning v. Clark*, 89 So.2d 339, 340–41 (Fla.1956).

Young cites, however, a recent Florida appellate case in which the court denied prejudgment interest because "the amount due . . . was unliquidated because of the numerous claims and cross-claims unresolved and at issue." *Parker's Mechanical Contractor's, Inc. v. Eastpoint Water and Sewer District*, 367 So.2d 665, 668 (Fla.App. 1st Dist. 1979). The court's reasoning in *Parker's* was ultimately grounded on a particular contractual provision, by which the plaintiff was not entitled to final payment until it had "not only . . . com-

plete[d] the project but . . . obtain[ed] a waiver of all such subcontractor claims." *Id.* at 669. This explicit contractual provision appears to have removed the dispute, in the court's view, from the established Florida rule that prejudgment interest is to be allowed on liquidated amounts indisputably owed, despite the pendency of a counterclaim. An isolated appellate case, imbued with special circumstances, is insufficient reason for us to depart from the rule announced in *Manning*, which embodies an approach adopted in numerous other jurisdictions. *See, e. g.*, cases cited at 22 Am. Jur.2d, Damages § 187, n. 3, 4 (1965); Annotation, Award of Prejudgment Interest to Contractor, 60 ALR 3d 487 § 5(c), p. 512 (1974).

### Attorneys' Fees

■ The district court denied attorneys' fees to Vulcan on the basis of *F.D. Rich Co., Inc. v. United States f/u/o Industrial Lumber Co., Inc.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). The decision defined the limited availability of attorneys' fees in Miller Act claims.

We note, however, that one of the sureties sued is not governed by the Miller Act. U.S.F.& G.'s performance and payment bond (see footnote 3) was executed under Florida law to guarantee to Volpe Bob Young, Inc.'s payment of its laborers and materialmen. Under *Motor City Electric Company v. Ohio Casualty Ins. Co.*, 374 So.2d 1068 (Fla.App. 3d Dist. 1979), this bond provided by a subcontractor is not a statutory bond limited by Fla.Stats. § 713.-23, but is rather a common law bond under which the materialman may recover as an intended beneficiary of its guarantee of payment.[11] Thus, attorneys' fees may be assessed against U.S.F.& G. under the au-

---

10. By contrast, the findings specifically address the counterplaintiff's claim for attorneys' fees.

11. The counterdefendants' argument that Vulcan was not the beneficiary of the bond is rather belated as there is no pleading of record raising any objection to joinder of U.S.F.& G.

as a defendant to the counterclaim. This argument is also based on a case in which the bond contained explicit contractual limitations as to designated beneficiaries. *National Union Fire Insurance Co. v. Westinghouse Electric Supply Co.*, 206 So.2d 60 (Fla.App. 3d Dist. 1968).

thority of and within the limits established in Fla.Stats. § 627.756.[12]

However, Fla.Stats. § 627.756 provides no authority for the award of attorneys' fees under the Miller Act bond issued by co-defendant Travelers (*see* footnote 3). In *Rich, supra,* the United States Supreme Court reversed a lower court's award of attorneys' fees in a Miller Act claim, where the award had been based on a "state policy" in favor of attorneys' fees in public construction contracts. The court held that the traditional American rule that attorneys' fees are not recoverable except when provided *explicitly* by contract or statute governed the claim. Here, however, the Florida statute upon which the counterplaintiff Vulcan relies is specifically applicable to "bonds written by the insurer under the laws of Florida." Fla.Stats. § 627.756.

Accordingly, we find that the district court correctly held attorneys' fees unavailable with respect to the Miller Act claim, but that it improperly denied such fees insofar as it awarded judgment under the Florida payment bond. *Accord United States ex rel. Garrett v. Midwest Const. Co.,* 619 F.2d 349 (5th Cir. 1980).

*Conclusion*

Under the conclusions reached herein, we AFFIRM the district court's award of judgment in favor of Vulcan, AFFIRM the court's denial of damages to Bob Young, Inc., REVERSE the court's failure to award prejudgment interest to Vulcan, and REVERSE the court's denial of attorneys' fees with respect to the claim on the Florida state bond. We accordingly REMAND for further proceedings in accordance with this opinion. AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

12. Fla.Stats. § 627.756 provides:

    Section 627.428 (attorney fee) shall also apply as to suits brought by owners, subcontractors, laborers and material men against a surety insurer under payment or performance bonds written by the insurer under the laws of Florida to indemnify such owners, subcontractors, laborers and material men against pecuniary loss by breach of a building or construction contract; except, that the amount to be so recovered for fees or compensation of such a plaintiff's attorney shall not be more than 12.5 percent of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney fees or compensation), nor shall it be less than $100 where the judgment or decree is for more than $500 nor less than $50 where the judgment or decree is $500 or less. Such owners, subcontractors, laborers and material men shall be deemed to be "insureds" or "beneficiaries" for the purposes of this section.

[This section is repealed by Laws 1976, c. 76–168, § 3, effective July 1, 1982.]