The UNITED STATES, For the Use of GENERAL ELECTRIC SUPPLY COMPANY, A DIVISION OF GENERAL ELECTRIC COMPANY, Plaintiff,

v.

MINORITY ELECTRIC COMPANY, Funderburg Builders, Inc., and Integon Indemnity Corporation, Defendants.

Civ. A. No. CV181–205.

United States District Court,
S. D. Georgia,
Augusta Division.

April 27, 1982.

John L. Creson, Augusta, Ga., for plaintiff.

J. Larry Palmer, Glen W. Clark, Jr., Lithia Springs, Ga., for Funderburg Bldg and Integon Indemnity and Minority.

## ORDER

BOWEN, District Judge.

In this action, brought under the Miller Act, 40 U.S.C. 270a *et seq.*, use plaintiff General Electric Supply Company seeks to recover, on a Miller Act payment bond, payment for materials supplied to defendant Minority Electric Company, a subcontractor of defendant Funderburg Builders, Inc., the prime contractor for a federal building contract. Defendant Integon is the surety on the payment bond. Use plaintiff presently seeks leave of this Court to amend its complaint by the addition of two paragraphs. The first paragraph, numbered twelve (12), alleges defendant Integon's failure and refusal to make payment to plaintiff was done in bad faith, vexatiously and for oppressive reasons for which the plaintiff is entitled to an award of attorney's fees. The second paragraph, numbered fourteen (14), again alleges a bad faith refusal to pay after a demand for payment was made by plaintiff upon Integon and, accordingly, Integon is liable for attorney's fees and a bad faith penalty of twenty-five percent of the amount owed as provided by Georgia Code Annotated § 103–210. Before addressing the propriety of allowing the amendments, the question of whether these claims can be made in a Miller Act case must be answered. Attention is first turned to proposed paragraph twelve's attorney's fees claim.

As articulated by the Supreme Court in *F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), the remedies available in a Miller Act case are determined by federal law. Although *Rich* held attorney's fees normally could not be awarded in a Miller Act suit, the Supreme Court recognized several exceptions to the general rule that attorney's fees were not recoverable. The exception pertinent to the case at bar permits the award of fees to be made to a successful litigant when the opposing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 417 U.S. at 129, 94 S.Ct. at 2165. Paragraph twelve alleges just these conditions and, therefore, under *Rich*, if proven, attorney's fees may be awarded.

The competency of Georgia Code Annotated § 103–210 to provide the remedy sought in paragraph numbered fourteen in a Miller Act case is questionable. In effect, plaintiff seeks to apply state law in a federal cause of action. Georgia Code Annotated § 103–210 provides for the recovery from a surety of attorney's fees and a penalty of twenty-five percent of the amount of the loss the surety is found to have refused, in bad faith, to pay an obligee to the surety contract. Although *Rich* holds that the rights and remedies of a Miller Act case are matters of federal law, the plaintiff argues a closer examination of *Rich* and other cases following it reveal several grounds permitting the application of Georgia law.

The first ground proffered by the plaintiff relies on an exception to the rule discussed in *Rich* precluding an award of attorney's fees. The plaintiff argues that allegations falling within the parameters of the *Rich* bad faith exception permits the Court to consider the claim for fees and penalties. Although this exception permits the recovery of attorney's fees, it does not allow the recovery of any state law penalties. The Supreme Court found no intention on the part of Congress to incorporate state law as directing the award of fees. The Court found a uniform rule of national application was more appropriate inasmuch

as it would avoid the inconsistencies and disadvantages associated with the process of fashioning remedies on a state-by-state basis. In sum, *Rich* expressly excluded the application of state law and did not, by any means, suggest that a penalty such as that contemplated by section 103–210 was within the scope of remedies provided by the Miller Act. The first ground is without merit.

Plaintiff's second ground is similarly fatally defective. It is contended that since section 103–210 provides for the award of penalties and attorney's fees in a situation involving a surety, the statute itself authorizes the Court's consideration of this particular claim. As support for this proposition, plaintiff relies upon *U.S.A. F/u/B/o Vulcan Materials v. Volpe Constr.*, 622 F.2d 880 (5th Cir. 1980). In *Vulcan*, in part a Miller Act suit, the issue of whether an award of attorney's fees under the Miller Act was permissible was dealt with by the court of appeals. The trial court had denied Vulcan Materials, a Miller Act materialman, attorney's fees, after prevailing at trial, relying upon the holding in the *Rich* case. The court of appeals noted that two sureties were involved in the *Vulcan* action, but only one was the Miller Act surety. The second surety's performance and payment bond was governed by Florida law. In assessing the trial court's denial of fees under the Florida bond, the Court looked to the Supreme Court's reaffirmation, in the *Rich* case, of the American rule proscribing the award of attorney's fees except when provided expressly by contract or statute. The Court found Florida law permits an award of fees for bonds executed under Florida law, and, accordingly reversed in part the trial court denial of fees, holding attorney fees could be assessed against the Florida surety. 622 F.2d at 887.

As the Court understands plaintiff's position, plaintiff argues the *Vulcan* court would have been authorized to reverse the denial of fees against the Miller Act surety if the Florida law had not limited its application to bonds executed under the laws of Florida. Thus the plaintiff argues, based on this interpretation of *Vulcan*, Georgia Code Annotated § 103–210 provides the

necessary authority for an award inasmuch as the statute does not limit itself solely to Georgia bonds, and has been construed not to apply to Miller Act bonds.

The plaintiff's reliance on *Vulcan* is misplaced. The Court is not persuaded that plaintiff's reading of *Vulcan* is correct. Instead, it appears the *Vulcan* court's reference to Florida law was not an attempt to explain why fees were not awarded under the Miller Act, that is, since Florida law was limited in scope, but was actually dealing with the issue of whether the American rule, as stated in *Rich*, precluded an award under the Florida bond. The *Vulcan* court expressly recognized that fees could not be assessed in a Miller Act case. The reason the American rule did not prevent an award under the Florida bond was the award was explicitly sanctioned by a Florida statute, one of the exceptions to the American rule. There is no such authority, however, under the Miller Act. The plaintiff's construction of *Vulcan* cannot stand, particularly in light of the clearly established principle that federal law, not state, governs Miller Act suits. *See United States F/u/B/o General Electric Supply Co. v. Wiring, Inc.*, 646 F.2d 1037, 1042 (5th Cir. 1981).

With respect to the plaintiff's contention that since section 103–210 is unlimited in its scope of application, it may be applied in Miller Act suits. This position flies directly into the face of the *Rich* holding that federal law governs Miller Act claims. Moreover, the Supreme Court rejected the *Rich* court of appeals holding that it was free to look to state policy to determine if an award of attorney's fees was appropriate. Regarding that policy, the Supreme Court stated: "We think it better to extricate the federal courts from the morass of trying to divine a 'state policy' as to the award of attorneys' fees in suits on construction bonds." 417 U.S. at 128, 94 S.Ct. at 2164. A search of Georgia statutory and case law does not reveal, and plaintiff does not cite any to the Court, any state authority determining the scope of section 103–210. Following the tenor of *Rich*, the Court declines to engage in a construction of section 103–210.

The third ground asserted by plaintiff invokes pendent jurisdiction. Plaintiff argues it may seek an award under section 103–210 as that constitutes a state claim which is pendent to the federal claim. As defendants have succinctly pointed out, pendent jurisdiction necessarily involves two claims: a federal claim and a state claim. In this case, however, plaintiff has brought only one cause of action, the Miller Act suit. There is no reference in the complaint to any state cause of action over which pendent jurisdiction can be exercised.

■ As the relief sought in proposed paragraph fourteen is impermissible under the Miller Act, that amendment will not be allowed. With respect to paragraph twelve, it is plain that the relief sought under the allegations raised in that paragraph may be properly considered. Rule 15, Federal Rules of Civil Procedure, provides that leave to amend should be freely given when justice requires. In this regard, the Court is vested with discretion to permit amendment. *Barrett v. Independent Order of Foresters*, 625 F.2d 73 (5th Cir. 1980). In exercise of this discretion, leave to amend plaintiff's complaint by the insertion of paragraph twelve is GRANTED.