STATE OF CONNECTICUT *v.* DENNIS CHAMPAGNE
(13192)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and HULL, Js.

Argued January 6—decision released March 1, 1988

*Robert M. Casale,* for the appellant (defendant).

*John M. Massameno,* assistant state's attorney, with whom, on the brief, was *Leah Hawley,* assistant state's attorney, for the appellee (state).

PETERS, C. J. This appeal calls for a determination of the extent to which the state has the authority, in pretrial proceedings, to garnishee mortgage payments that are the cash proceeds of alleged illegal racketeering activity. The defendant, Dennis Champagne, stands accused of having knowingly engaged in a "pattern of racketeering activity" in violation of General Statutes § 53-395 (c)[1] of the Corrupt Organizations and Racketeering Activity Act (CORA), General Statutes § 53-393 et seq. Pursuant to its authority under General Statutes § 53-398 (a) (1),[2] the trial court, after a hearing, rendered an order prohibiting the defendant from "transferring, depleting or otherwise alienating or diminishing" any property that is subject to forfeiture to the state upon his conviction. The defendant

[1] General Statutes § 53-395 (c) provides: "It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity or through the collection of an unlawful debt."

[2] General Statutes § 53-398 (a) (1) provides: "COURT ORDERS. (a) At any time in any prosecution under this chapter, the superior court shall have jurisdiction to render and may render the following orders: (1) An order prohibiting the defendant from transferring, depleting or otherwise alienating or diminishing any property of his which there is probable cause to believe is subject to forfeiture under this chapter."

brings this interlocutory appeal pursuant to General Statutes § 53-401 (a),[3] claiming principally that the trial court erred in not allowing him to use a portion of the forfeitable property to pay for attorney's fees he will incur in defending the CORA prosecution. We conclude that there is error and remand for further proceedings.

The following facts and procedural history are undisputed. In July, 1980, the defendant purchased a parcel of real estate at 1 Island Brook Avenue in Bridgeport (Island Brook). This property was subsequently leased to D & T Auto Salvage, Inc., a Connecticut corporation engaged in the automobile repair and junkyard business. The defendant was an officer and stockholder in that corporation. In 1985, the defendant sold the real estate and his stock interest in the corporation. As part of the consideration for the sale, the defendant took back a purchase money mortgage[4] in the amount of $157,000 from the purchaser.[5]

Roughly one year later, the defendant was arrested and charged with racketeering under CORA. The information alleges that the defendant and his associates bought or received stolen cars, which they dismantled and sold at a profit as component parts. The state further charged that this operation, colloquially known as a "chop shop," was operated at the Island Brook property previously owned by the defendant. As a penalty

---

[3] General Statutes § 53-401 (a) provides: "APPEAL OF ORDERS. STAY OF EXECUTION. FILING OF ORDERS. (a) Any order rendered as provided in section 53-398 or 53-400 shall be deemed a final judgment for the purpose of appeal, which, notwithstanding section 54-96, may be taken by the state or the defendant."

[4] A purchase money mortgage is "one taken back by the seller for part of the purchase money." R. Kratovil & R. Werner, Modern Mortgage Law and Practice (2d Ed. 1981) § 19.01.

[5] The record reveals that a cash downpayment of undisclosed amount was also received by the defendant pursuant to the sale. Because the state has not yet claimed a right to forfeit this money, it plays no role in our disposition of this case.

for operating the "chop shop," the state seeks the forfeiture of the defendant's interest in this property, represented by his monthly receipt of payments from the mortgagor of the property.

Prior to the commencement of trial on the criminal charges, the state invoked three separate CORA provisions that authorize the freezing of property that is potentially subject to CORA forfeiture. First, under General Statutes § 53-398 (a) (1), the defendant was prohibited from transferring or depleting any forfeitable property. Second, under General Statutes § 53-398 (a) (2),[6] a receivership was established to collect the defendant's mortgage payments. Third, under General Statutes § 53-399 (e),[7] a lien on the forfeitable property in favor of the state was established by filing a lien notice in the land records of Bridgeport.

In accordance with the provisions of General Statutes § 53-400 (c),[8] the defendant then filed a motion to discharge or modify the CORA lien notice. The filing of such a motion triggers a statutory requirement that a hearing be held, within ten days, at which the state

[6] General Statutes § 53-398 (a) (2) provides that a trial court may render "[a]n order appointing a receiver, in accordance with chapter 920 and the rules of court relating thereto which are not inconsistent with this chapter, over such property which there is probable cause to believe is subject to forfeiture under this chapter. Such receiver shall have all powers and obligations, subject to the supervision of the court, that exist under the statutes, the common law and the rules of court relating thereto, which are not inconsistent with this chapter, and shall be compensated with funds appropriated to the judicial department in an amount that the court determines is reasonable . . . ."

[7] General Statutes § 53-399 (e) provides: "The filing of a CORA lien notice creates, from the time of its filing, a lien in favor of the state on the property therein described of the defendant named in the notice as provided in subdivision (1) of subsection (b) of this section."

[8] General Statutes § 53-400 (c) provides: "At any time after a CORA lien notice has been filed by a state's attorney or his designee pursuant to this chapter, the defendant or any state's attorney may, by motion to the court in which such action is pending, seek a discharge or modification of such notice."

bears the burden of proving that the property described in the lien notice is subject to forfeiture. General Statutes § 53-400 (c) (1).[9]

The defendant's motion for discharge or modification alleged lack of probable cause to believe that the mortgage payments attributable to the Island Brook property are forfeitable property. The defendant in his motion urged the trial court to hold that the lien was improper because: (1) the defendant's property was not forfeitable because he had sold his interest in Island Brook before the initiation of the CORA prosecution; (2) the defendant, being otherwise indigent,[10] needed access to his mortgage income in order to exercise his sixth amendment right to hire counsel of choice; and (3) the application of CORA to the defendant would

---

[9] General Statutes § 53-400 (c) (1) provides: "At any time after a CORA lien notice has been filed by a state's attorney or his designee pursuant to this chapter, the defendant or any state's attorney may, by motion to the court in which such action is pending, seek a discharge or modification of such notice.

"(1) The clerk shall, upon the filing of such motion, immediately set a date for hearing, which date shall be not less than five nor more than ten days after the motion has been filed, and shall notify the parties thereof. At the hearing, the court shall determine whether there is probable cause to believe (A) that any property owned by the defendant is covered by the CORA lien notice; and if so, (B) that such property or any additional property not yet covered by such notice but sought by the state to be included therein is subject to forfeiture under this chapter. The state shall bear the burden of proof at such hearing and may present to the court affidavits, testimony under oath, or other evidence that would establish such probable cause. The defendant may appear and be heard on the issue. If the court concludes that, based on the evidence, there is no probable cause to believe that any property or a portion thereof, which is covered by the CORA lien notice is subject to forfeiture under this chapter, it shall discharge the CORA lien notice or shall modify such notice so that it applies only to the property which there is probable cause to believe is subject to forfeiture under this chapter."

[10] In an affidavit filed with his motion to discharge the lien, the defendant averred that his "sole source of income" consists of monthly payments from the mortgagor and that he would be "wholly without funds to retain counsel of [his] choice" if the state were allowed to garnish the payments. On appeal, the state does not contest these representations.

unconstitutionally expose him to an ex post facto legislative enactment. In his brief in support of his motion, the defendant referred to a further ground for exempting the mortgage payments from pretrial garnishment: a statutory exemption for "net income or profits," contained in General Statutes § 53-398 (b).

The trial court declined to discharge the lien. The court found probable cause to believe that the property described in the lien notice was forfeitable. In its rejection of the defendant's claim that a preprosecution conveyance necessarily sheltered property from the forfeiture provision of CORA, the court relied, at least in part, on established Connecticut law that a mortgagee has an ownership interest in the mortgaged property. The court considered the defendant's sixth amendment right to hire counsel of choice to be outweighed in this case by the state's interest in deterrence of organized crime and in punishment of illegal conduct. The court lastly found no merit in the defendant's ex post facto challenge, because the information charged the defendant with racketeering activity both prior and subsequent to the effective date of the statute. The trial court did not address the defendant's claim that he was entitled to an exemption for "net income or profits" under § 53-398 (b).

On appeal, the defendant renews the claims that he made to the trial court. We will consider first his broad argument that property conveyed in a bona fide, arms-length transaction prior to the initiation of CORA proceedings is per se exempt from forfeiture. We will then turn to a consideration of the more limited contention that the express statutory exemption of "net income or profits" should be construed to protect the defendant's alleged sixth amendment right to hire counsel of his own choice. We find error only on the latter, more limited, ground.

I

The defendant argues broadly that the forfeiture and pretrial freeze provisions of CORA do not reach property that was transferred prior to the commencement of the prosecution unless the state proves that the transfer was made "with the intention of preventing its forfeiture" as specified under General Statutes § 53-397 (b) (3).[11] Under that section, "the court may set aside" the fraudulent transfer and render appropriate orders "reasonably necessary to protect the rights of any innocent party to any such transfer." This claim of an implied limitation on CORA's reach finds support, according to the defendant, in the lack of any CORA provision relating the occurrence of forfeiture back to the time the offense was committed.

The state maintains, to the contrary, that the forfeitable property in this case, the purchase money mortgage on the Island Brook property, falls within the direct purview of forfeitures authorized by CORA. CORA authorizes forfeiture of "[a]ny property . . . acquired, maintained or used in violation of this chapter, including profits derived therefrom and the appreciated value thereof, *or, where applicable, the proceeds from the sale thereof.*" (Emphasis added.) General Statutes § 53-397 (a) (1). CORA defines "property" as "any property, real or personal, or any interest therein or any beneficial interest of whatever kind." General Statutes § 53-394 (g). According to the state, the set aside provision of § 53-397 (b) (3) upon which the defendant

---

[11] General Statutes § 53-397 (b) (3) provides: "If the court or the jury, as the case may be, concludes that property previously owned by the defendant would have been subject to forfeiture under this chapter but for the fact that it was transferred by the defendant prior to any judgment of forfeiture with the intention of preventing its forfeiture under this chapter, the court may set aside such transfer. The court may also render any other appropriate order reasonably necessary to protect the rights of any innocent party to any such transfer."

relies is an unrelated remedy that comes into play only when the "proceeds from the sale thereof" are patently insufficient in relation to the value of the property that was previously transferred.

The issue before us, therefore, is whether, in light of CORA's language and purpose, its forfeiture provisions encompass the defendant's mortgage payments as "proceeds from the sale" of real and personal property that was "acquired, maintained or used" in the commission of illegal racketeering activity. In our construction of the applicable statutory language, our goal is to "ascertain and give effect to the apparent intent of the legislature." *State* v. *Blasko,* 202 Conn. 541, 553, 522 A.2d 753 (1987). In reaching this goal, we consider first whether the language of the statute yields a plain and unambiguous resolution. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve. *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986).

The defendant in this case urges us to apply a further maxim of statutory construction: the criminal sanction of forfeiture must be strictly construed. In support of this claim, the defendant asserts that the penalty of forfeiture is "foreign" to our law. In the unqualified form in which this assertion is stated, it is inaccurate. Recourse to forfeiture in certain cases is an ancient, albeit sparingly used, fixture in our criminal jurisprudence, as a brief review of the historical record demonstrates.

The common law of England recognized two principal types of forfeiture. The value of an object, or the object itself, that caused the accidental death of a King's subject was forfeited to the Crown as a deodand. J. Finkelstein, "The Goring Ox: Some Historical Per-

spectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty," 46 Temp. L.Q. 169, 197 (1973). The common law also imposed a forfeiture of estate consequent to conviction of a felony or treason. Note, "Bane of American Forfeiture Law—Banished At Last?" 62 Cornell L. Rev. 768, 771–72 (1977). This latter penalty had two especially harsh results: the accused was deemed to forfeit the entirety of his personal and real property upon a judgment of conviction; *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–82, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974); and his " 'blood was corrupted' so that nothing could pass by inheritance through his line." *United States* v. *Grande,* 620 F.2d 1026, 1038 (4th Cir.), cert. denied sub nom. *Castagna* v. *United States,* 449 U.S. 830, 101 S. Ct. 98, 66 L. Ed. 2d 35 (1980).

Neither type of forfeiture gained currency in this country. The deodand was rejected largely because it was viewed as a superstitious institution that rested on a fiction that the offending object itself was morally afflicted for having caused death. *Parker-Harris Co.* v. *Tate,* 135 Tenn. 509, 514–15, 188 S.W. 54 (1916). The broad penalty of forfeiture of estate was also repudiated in Connecticut by the end of the eighteenth century. 2 Z. Swift, A System of the Laws of the State of Connecticut (1796) p. 405; see also article ninth, § 4, of the Connecticut constitution of 1818 ("no conviction of treason, or attainder, shall work corruption of blood, or forfeiture").

In Connecticut and elsewhere in the United States, forfeiture came to be recognized, not in its common law version, which authorized the wholesale invalidation of property rights, but as an authorized adjunct for the exercise of powers specified in particular criminal statutes. 1 Bishop, Criminal Law (9th Ed. 1923) § 944.1, p. 695; 2 J. Kent, Commentaries on American Law (7th

Ed. 1851) p. 464; see also note, "Bane of American Forfeiture Law—Banished at Last?" supra, 779 n.73 and 795 n.162. Swift described Connecticut law as permitting the seizure of "a specific sum [which] is considered to be the punishment itself, and not the consequence of the judgment." 2 Z. Swift, supra. That law was exemplified by *Boles* v. *Lynde,* 1 Root (Conn.) 195 (1790), in which the court reviewed a conviction under a statute criminalizing fishing activity near the mouth of the Connecticut River. Any defendant convicted under the statute forfeited "the seine, ropes and other utensils used in catching fish, contrary to the act." Id. Instead of seizing the utensils, however, the trial court in *Boles* v. *Lynde* assessed a fine equal to the value of the fishing gear. This court reversed, holding that the property itself was subject to forfeiture, not its appraised value. See also *Ely* v. *Bugbee,* 90 Conn. 584, 98 A. 121 (1916) (upholding a seizure of a motor boat and eighty rods of gill net); and compare *Lawton* v. *Steele,* 152 U.S. 133, 139–40, 14 S. Ct. 499, 38 L. Ed. 385 (1894) (affirming the police power of states to seize implements used in catching fish in violation of law).

While the penalty of forfeiture is therefore not "foreign" to our criminal law, we nonetheless agree with the defendant that such a sanction must be strictly construed. As a general matter, our penal law must be strictly construed to protect fundamental constitutional rights. *State* v. *Belton,* 190 Conn. 496, 505, 461 A.2d 973 (1983); see *United States* v. *Enmons,* 410 U.S. 396, 411, 93 S. Ct. 1007, 35 L. Ed. 2d 379 (1973). Forfeiture statutes in particular have been narrowly construed. *United States* v. *Rubin,* 559 F.2d 975, 991 (5th Cir. 1977). In applying this rule of construction, however, we must not frustrate the evident design of the legislature. *State* v. *Woolcock,* 201 Conn. 605, 630–31, 518 A.2d 1377 (1986).

We turn now to an application of these principles to the issue before us: Does CORA encompass the defendant's mortgage payments as "proceeds from the sale" of property illegally "acquired, maintained or used" for racketeering purposes? We conclude that CORA authorizes the state to make such property forfeitable whether or not the state can prove an intent to avoid forfeiture.

The forfeiture penalty under CORA is broad in scope. The act provides that, upon conviction, the court "shall render a judgment of forfeiture" authorizing the state to seize "all" forfeitable property. General Statutes § 53-397 (b) (1).[12] By its own terms, the act envisions the possibility of having to seize property that no longer belongs to the defendant in its original form. In such situations, the act provides two mechanisms for recapturing the property or the value thereof. If possible, "where applicable, the proceeds from the sale" of forfeitable property may be seized directly. General Statutes § 53-397 (a) (1).[13] In the alternative, the state may seek to set aside a prior fraudulent transfer under § 53-397 (b) (3).[14] Because this alternative remedy has

[12] General Statutes § 53-397 (b) (1) provides: "Upon conviction of a person under this chapter the court or the jury, as the case may be, before which the defendant was tried shall determine the extent to which any property of such person is subject to forfeiture under this chapter and shall hear evidence thereon. Upon a determination thereof, the court shall render a judgment of forfeiture and authorize the chief state's attorney to seize in the name of the state all property subject to forfeiture under this chapter upon such terms or conditions, relating only to such matters as the time and method of such seizure, as the court shall deem proper."

[13] General Statutes § 53-397 (a) (1) provides: "PENALTY. FORFEITURE OF PROPERTY. DISPOSITION OF SEIZED PROPERTY. APPOINTMENT OF RECEIVER. (a) A person who violates any provision of this chapter shall be imprisoned for a definite term of not less than one year nor more than twenty years or may be fined not more than twenty-five thousand dollars, or both, and shall forfeit to the state: (1) Any property he has acquired, maintained or used in violation of this chapter, including profits derived therefrom and the appreciated value thereof, or, where applicable, the proceeds from the sale thereof."

[14] See footnote 11, supra.

the potential for adversely affecting innocent third parties, the court is empowered to issue appropriate orders protecting their interests. General Statutes § 53-397 (b) (3).

Although the statutory scheme therefore appears, on its face, to create two unrelated and independent mechanisms for vindicating the state's right to forfeiture, the defendant urges us to construe them as interwoven. He argues that the state's right to seize "proceeds from the sale" of forfeitable property under § 53-397 (a) (1) is available only upon proof that the pre-prosecution transfer that generated the proceeds was made with "the intention of preventing its forfeiture" as provided in § 53-397 (b) (3). The "where applicable" clause in § 53-397 (a) (1) is, according to the defendant, a directive to interpolate the intent requirement of § 53-397 (b) (3) into the "proceeds from the sale" clause of § 53-397 (a) (1). We disagree.

The set aside provision in § 53-397 (b) (3) is addressed to the unique problem of recapturing *"property previously owned* by the defendant." (Emphasis added.) The section thereby provides a mechanism for reaching back to undo transfers that thwart the right of forfeiture. Had the defendant in this case transferred the "proceeds from the sale" of his property to a third party, the state would conceivably have a remedy under the set aside provision. That is not this case. It is undisputed that the defendant is himself receiving the mortgage payments, which clearly come within the definition of "property" in § 53-394 (g).[15] Because the defendant continues to possess the "property" that is being forfeited, this forfeiture is unaffected by § 53-397 (b) (3), which applies only to "property previously owned."

---

[15] General Statutes § 53-394 (g) provides: " 'Property' includes any property, real or personal, or any interest therein or any beneficial interest of whatever kind."

The absence of a specific provision relating the occurrence of forfeiture back to the commission of the offense does not, contrary to the defendant's argument, compel a different conclusion. Under the doctrine of relation back, the state may exercise a right to forfeiture as of the date of the commission of the offense, at which time ownership is said to vest in the government. *United States* v. *Stowell,* 133 U.S. 1, 16–17, 10 S. Ct. 244, 33 L. Ed. 555 (1890); *Florida Dealers & Growers Bank* v. *United States,* 279 F.2d 673, 676 (5th Cir. 1960). Under the forfeiture scheme enacted pursuant to CORA, however, this general doctrine has been superseded by a statutory framework for identifying and seizing forfeitable property.[16] General Statutes §§ 53-397, 53-398.

Our conclusion that bona fide preprosecution transfers are not per se exempt from forfeiture is consistent with CORA's legislative history. In urging passage of the bill, Senator Howard T. Owens, Jr., described a hypothetical racketeer who takes a $50,000 profit gained in a cocaine transaction and invests the money in real estate, which then appreciates in value to $350,000. By subjecting the entire appreciated value of the real estate to forfeiture, he stated, "we would not allow [racketeers] to profit from their illegal activity." 25 S. Proc., Pt. 12, 1982 Sess., p. 3914. Further, in the House of Representatives, Representative Richard D. Tulisano stated that the forfeiture provision subjected "whatever ill gained money may be invested in, to forfeiture. There are similar laws in the federal government and some other states as well as Puerto Rico." 25 H.R.

---

[16] The only reference to "relation back" in the text of CORA is found in General Statutes § 53-402 (c), which provides that "[t]he title of the state to forfeited property shall, in the case of real property or a beneficial interest, relate back to the date on which a CORA lien notice" was filed. Nothing in this provision, which deals only with the narrow question of title, purports to define the scope of the forfeiture provisions of CORA. That definition resides principally in General Statutes § 53-397 (a).

Proc., Pt. 14, 1982 Sess., p. 4540. Both statements indicate that the General Assembly intended CORA to track the progression of property "acquired, maintained and used" in illegal racketeering activity. This tracking of illicit funds occurs under federal anti-racketeering law as well because its analagous purpose is to "remove the profit from organized crime by separating the racketeer from his dishonest gains." *Russello* v. *United States,* 464 U.S. 16, 28, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983). The trial court correctly denied the defendant's motion to discharge the CORA lien on this ground.

## II

The defendant's more limited claim for modification of the CORA lien rests on the statutory exemption contained in General Statutes § 53-398 (b). He maintains that he is entitled to retain a portion of the mortgage payments because this statute provides: "Nothing in this section shall be construed as affecting the right of the defendant to receive any net income or profits resulting from the use and ownership of such property belonging to him for which there is probable cause to believe is subject to forfeiture under this chapter until a final judgment of forfeiture is rendered." According to the defendant, at least until a final judgment of forfeiture has been rendered the interest component of each mortgage payment qualifies as "net income or profits" within this exemption. In opposition, the state asserts that, as "proceeds," the mortage payments are forfeitable under § 53-397 (a) in their entirety. We agree with the defendant.

General Statutes § 53-398 as a whole expresses a clear legislative design for the balanced judicial supervision of putatively forfeitable property during the preconviction stage of a CORA prosecution. Subsection (a) addresses itself to the jurisdiction of the Superior

Court to render orders preserving the assets of a defendant prior to conviction. A Superior Court may render a freeze order pursuant to subdivision (1) only upon proof of "probable cause" that the property is subject to forfeiture under the act. An order appointing a receiver under subdivision (2) must conform to established procedures under chapter 920 of the General Statutes. The court is further authorized under subdivision (3) to allow a defendant to transfer or deplete forfeitable property upon the posting of adequate security. The rights of innocent third persons may be protected pursuant to subdivision (4). Each of these subdivisions vests discretion in the trial court to take appropriate action on a case-by-case basis.

In subsection (b) of § 53-398, however, the language of the statute is mandatory: "Nothing in this section shall be construed as affecting the right of the defendant to receive any net income or profits" arising from his use or ownership of forfeitable property. This reservation of rights may well have reflected a legislative decision that, in light of the presumption of innocence in criminal cases and the severity of the forfeiture penalty upon conviction, a CORA defendant should be afforded some relief during the preconviction phase of prosecution.

We do not agree with the state that the broad language contained in § 53-397 (a) is controlling. "As a matter of statutory construction, specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter. *McKinley* v. *Musshorn,* 185 Conn. 616, 624, 441 A.2d 600 (1981); *Edmundson* v. *Rivera,* 169 Conn. 630, 635, 363 A.2d 1031 (1975)." *State* v. *Torres,* 206 Conn. 346, 359, 538 A.2d 185 (1988); see also 2A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 46.05. Because the legislature has specifically resolved this issue in favor of the defendant by clear

and unambiguous language, we must give full effect to the terms of the statute. *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 399, 512 A.2d 152 (1986); *Connecticut Hospital Assn.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 141, 509 A.2d 1050 (1986). We therefore conclude that the defendant is entitled to receive the "net income or profits" from the mortgage payments in this case.

Our holding does not unreasonably impair the state's right of forfeiture under CORA. If the defendant is ultimately convicted for having engaged in illegal racketeering activity through the Island Brook enterprise, the state may then acquire the entire remaining "proceeds from the sale" of the property pursuant to § 53-397 (a) (1). The definition of "proceeds" as "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue: the total amount brought in"; N. Webster, Third New International Dictionary; certainly encompasses at least the interest component of the mortgage payments currently received by the defendant. To the extent that the state's seizure is diminished in the interim because of the effect of § 53-398 (b), we can only conclude that this diminution is the consequence of a legislative decision to balance the competing interests involved.

Indeed, the legislature's good judgment is underscored in this case by the implications of the statutory exemption for the defendant's argument that access to his mortgage payments is constitutionally required in order to protect his sixth amendment right to retain counsel of his choice. A similar constitutional claim arising under forfeiture provisions of the federal anti-racketeering act has not as yet been definitively resolved in the federal courts. Compare *United States* v. *Harvey,* 814 F.2d 905, 918–26 (4th Cir. 1987), rev'd in part en banc sub nom. *In re Forfeiture Hearing as to Caplin & Drysdale, Chartered,* 837 F.2d 637 (4th Cir. 1988),

and *United States* v. *Monsanto,* 836 F.2d 74 (2d Cir. 1987), with *United States* v. *Nichols,* 654 F. Sup. 1541, 1556–59 (D. Utah 1987); *United States* v. *Rogers,* 602 F. Sup. 1332, 1348–49 (D. Colo. 1985); see K. Brickey, "Forfeiture of Attorneys' Fees: The Impact of RICO and CCE Forfeitures on the Right to Counsel," 72 Va. L. Rev. 493 (1986); comment, "RICO and the Forfeiture of Attorneys' Fees: Removing the Adversary From the Adversarial System?" 62 Wash. L. Rev. 201 (1987). We need not, however, address such a constitutional claim on its merits when the statute itself may contain sufficient redress for the defendant. As is customary, we " 'follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions.' *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980)." *State* v. *Torres, supra,* 362. It is, nonetheless, relevant to our construction of the statutory exemption that our interpretation avoids placing the forfeiture provisions of CORA in immediate constitutional jeopardy. *French* v. *Amalgamated Local Union 376,* 203 Conn. 624, 636–37, 526 A.2d 861 (1987); *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981).

On the present record, we cannot determine what part, if any, of each mortgage payment is "net income or profit" within § 53-398 (b) or whether the moneys that fall within the exemption therein provided will be sufficient to pay the attorney's fees that the defendant will incur in defending himself from the CORA violations with which he has been charged. A remand is therefore required.

We note initially that the interest component of each payment would fall squarely within the definition of "net income" under this statutory exception. Cf. General Statutes § 12-213; *Sturtevant* v. *Sturtevant,* 146 Conn. 644, 648, 153 A.2d 828 (1959). Interest is

ordinarily taxable as net proceeds under federal internal revenue law; 26 U.S.C. §§ 61, 63 (1982); specifically, interest received on a mortgage debt is taxable as net income. 1 J. Merten, Law of Federal Income Tax (1986) § 6A.14.

The mortgage in this case[17] obligates the mortgagor to make 120 monthly payments of $2072.78 on a principal debt of $157,000 to be repaid with interest at the rate of 10 percent. Over the lifetime of the mortgage, the defendant will therefore be entitled to receive a total sum of $248,733.60 over a period of 120 months. Once the principal amount of $157,000 is subtracted, interest accounts for $91,733.60 of the total amount due on the note. The mortgage note does not, however, indicate how the interest is to be apportioned over the life of the loan. We do not know, therefore, what portion of each $2072.78 payment to attribute to interest, and hence to "net income or profits" under the statutory exemption.

On remand, the trial court is directed to hold a hearing to determine what portion of the defendant's mortgage payments constitutes interest and thus qualifies for the exemption under § 53-398 (b) and whether the income made available to the defendant by the statute will suffice to afford him reasonable access to counsel of his choice. If the defendant is dissatisfied with either aspect of this determination, he will have a renewed right to further interlocutory appellate review of these claims.

---

[17] In its application for an arrest warrant in this case, the state included a copy of the mortgage note given by the mortgagor to the defendant. This document furnishes the following information: "[F]or value received" the mortgagor promised to pay the defendant the sum of $157,000 "with interest at the rate of Ten (10) PERCENT per annum . . . . Said principal and interest is payable in One Hundred Twenty (120) successive monthly payments of Two Thousand Seventy Two and 78/100 ($2072.78) DOLLARS, commencing one (1) month from the date hereof, and the same each month thereafter until the principal and interest are fully paid . . . ."

There is error, the judgment is vacated and the case is remanded to the trial court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.