[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 BACKGROUND
This action is an in rem proceeding brought by the state pursuant to General Statutes § 54-36h, Connecticut's drug trafficking asset CT Page 5340 forfeiture statute. The court must determine the disposition of $28,194.63 in United States currency that was seized from the respondent, Walter Day, by the Ansonia police department on April 9, 1997.[1] On June 6, 1997, the state petitioned the court to order a forfeiture of the currency. The state later learned, however, that the seized property, which consisted of the currency and what was allegedly a large quantity of cocaine, was no longer in the physical custody of the police department because it was stolen from the police department's property room. On October 19, 1998, the respondent filed a motion to dismiss the forfeiture proceeding on the ground that the court lacked subject mater jurisdiction because there was no longer a res over which the court could exercise jurisdiction. On December 18, 1998, this court,Sylvester, J., denied the motion to dismiss, concluding that the fact that the money was no longer within the control of the court does not deprive the court of subject matter jurisdiction because jurisdiction was completely established at the time when the state filed its forfeiture petition and because money is fungible, the fact that the res might literally be different is immaterial because it can be replaced by the town or its insurer.
 FACTS
This matter was tried before the court on November 15 and 30, 2000. Based on the relevant and admissible evidence adduced at trial, the court finds the following facts. On April 9, 1997, officers of the Ansonia police department were dispatched to 11 Cook Street to investigate a suspicious persons complaint. Officer Nathan Anderson, the first officer to arrive on the scene, testified that upon his arrival he observed a gray vehicle that was occupied by two black males. One of the men, later identified as Frederick Kollock, was seated in the driver's seat. The other man, later identified as Walter Day, the respondent in these proceedings, was seated in the front passenger seat. After radioing for backup, Anderson approached the vehicle. As he approached, both men exited the vehicle. As Day exited the vehicle, several small purple ziplock bags fell from his lap. Anderson ordered the men to return to the vehicle. As Anderson approached the vehicle a second time, the occupants again exited the vehicle, leaving the vehicle doors open as they exited. Anderson observed that Day was wearing black jeans and was holding a black leather jacket. Day had on white socks but was not wearing any shoes. At that point, both men began to flee from the officer. As Anderson ran past the vehicle in pursuit of the men, he observed a bag of currency on the floor of the front passenger compartment. Anderson subdued Kollock but Day ran through the backyards of the Cook Street homes toward Division Street, which abuts Cook. Anderson radioed in a description of Day and the direction in which he had fled. CT Page 5341
A second officer, Officer Gerald Tenney, began pursuing Day. Tenney testified that he observed Day, now fleeing in his underwear and carrying the black jeans he had been wearing earlier, enter a home located at 89 Division Street. Tenney ran inside after Day. He located Day inside the closet of an upstairs bedroom. A struggle ensued between Tenney and Day. Tenney called for backup. Day broke free and jumped out a second floor window. Day was ultimately apprehended by Officer Edward Henry. Day was then taken to the hospital by ambulance for medical treatment.
Tenney returned to 89 Division Street and located the black jeans that Day had been carrying. A search of the right front pocket of the jeans uncovered a wad of cash and a small clear plastic bag containing a large amount of, what was suspected by Tenney to be, cocaine. A sample of the substance in the bag was later field tested. The substance tested positive for cocaine.
Anderson, who remained at the Cook Street location in order to secure the scene, showed a third officer, Lieutenant Michael Abbels the path Day had taken in fleeing from Cook Street over to Division Street. In retracing Day's path, Abbels discovered six clear plastic bags, each containing sixty smaller, purple bags. Each of the smaller purple bags contained a white powdery substance. The total weight of the bags was 43 grams. The bags were not covered with dirt or trodden upon, leading Abbels to suspect that the bags had been on the ground for only a short period of time. Abbels testified that, based upon his training and experience, he believed the white powder to be cocaine. He took the bags back to the police station where he field tested two separate samples of the powder. Each sample tested positive for cocaine. Abbels also testified that both the quantity and packaging of the cocaine were consistent with sales, rather than personal use. Further, Abbels testified that, based on his experience, the cocaine had a street value of approximately $3,600.
A search of the gray vehicle that the men were sitting in when Anderson arrived at the Cook Street location revealed six small purple ziplock bags containing what the officers believed was cocaine. These bags were scattered across the floor of the front passenger side of the vehicle. An unzipped blue cloth bag was also located on the floor of the front passenger side, along with a pair of men's shoes. The bag contained a large amount of cash, which was later determined to be $27,020, packaged in 27 bundles of $1,000 each, along with a loose $20 bill. The black leather jacket Day had been clutching earlier was laying on the front passenger's seat. Photographs of the interior of the vehicle, which were introduced at trial, were, for the most part, consistent with Anderson's testimony regarding the interior of the vehicle as he observed it while he was pursuing Day and Kollock. After the evidence was seized and taken CT Page 5342 to the police station, an additional amount of cocaine was found in Day's black jeans. The currency that was taken from both Day's jeans and the blue cloth bag totaled $28,194.63.
According to records from the Connecticut department of labor, Day reported income of $1,883.78 for the period running from the first quarter of 1994, through the third quarter of 1997. This income constituted Day's earnings from his employment at McDonald's Restaurant, where he earned $4.75 per hour, and Fair Lanes Meadows, where he earned $6.25 per hour. Day was contemporaneously employed at McDonald's and Fair Lanes for the period October 1, 1994, through March 31, 1995. Day also claims to have worked for a period, running from 1996 through 1997, doing odd jobs for a Steven Carrington. None of this income was reported, however. Further, the evidence showed that Day has been incarcerated for much of the period prior to April 9, 1997, the date of this incident, which thereby limited his earning capacity for that period of time.
Pursuant to a stipulation between the parties, Day's responses to the state's interrogatories, dated April 15, 1998, were also admitted into evidence. In his responses, Day claimed that he was in Ansonia on April 7, 1997, with his friend, Kollock, whose girlfriend lives in Ansonia. Day claimed that he was a passenger in Kollock's vehicle and that the two were on their way to the bank to place Day's money in a safe deposit box. Day also stated that all of the money he had with him that day, the money at issue in this proceeding, was income earned through employment. He stated that he intended to use this money for his everyday affairs and purchases needed for everyday living. Day filed no income tax returns for the years 1992 through 1997, inclusive, and he has not had a bank account during that period of time. Further, Day denied having had any narcotics in his possession on April 9, 1997. He has admitted, however, that he has been previously convicted for narcotic offenses.
 DISCUSSION
The state seeks forfeiture of this currency pursuant to § 54-36h
(a)(2), which provides that: "The following property shall be subject to forfeiture to the state pursuant to subsection (b) of this section . . . (2) All property constituting the proceeds obtained, directly or indirectly, from any sale or exchange of any such controlled substance in violation of section 21a-277 or 21a-278. . . ." Pursuant to subsection (b), the state bears "the burden of proving all material facts by clear and convincing evidence. . . ." General Statutes § 54-36h (b). "The phrase clear, substantial and convincing evidence fairly characterizes' that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal CT Page 5343 prosecution. . . . [T]he burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) State v.Hydock, 51 Conn. App. 753, 762-63, 725 A.2d 379, cert. denied,248 Conn. 921, 733 A.2d 846 (1999).
The state contends that it has proven, by clear and convincing evidence, that the currency at issue in this proceeding is the proceeds of narcotics sales. It argues that it has done so by showing that at the same time that the currency was seized from Day, he also had in his possession a large amount of cocaine. It argues that, the quantity of cocaine found in Day's possession was not consistent with personal use but, rather, was consistent with sales and was packaged in a manner consistent with sales. The state further argues that the seizure of the narcotics along with a substantial amount of cash, coupled with the facts that Day had prior narcotics convictions, reported very little income and was incarcerated for much of the period prior to April 9, 1997, thereby limiting his earning capacity, leads to the reasonable belief that any money that he possessed on that date most probably constituted drug proceeds.
Day, on the other hand, contends that the state has failed to meet its burden of proving by clear and convincing evidence that the $28,194.63 constitutes proceeds from the sale of a controlled substance and, therefore, the money should be returned to him. He argues that because the state has offered no evidence that shows that either Day or Kollock was a drug buyer or seller, the state cannot establish that Day's money constitutes drug proceeds. Day buttresses this argument with the fact that Anderson was dispatched to the scene merely to investigate a report of "suspicious activity" not to investigate a report of suspected drug sales." He further argues that the court can only speculate that the money constitutes proceeds from the sale of narcotics because the police have neither produced any physical evidence of narcotics, nor can they do so, because the police no longer possess the alleged narcotics they claim to have seized from Day. Day also argues that because the money has also been stolen, it cannot now itself be tested for the presence of narcotics and that, as a result, he has been prejudiced in this proceeding. Further, Day argues that because the statute subjects to forfeiture only that specific property which constitutes proceeds of drug sales and because there was more than $28,000 found with what was allegedly $3,600 worth of cocaine, only $3,600 of the cash can possibly constitute drug sale proceeds and be subject to forfeiture pursuant to the statute. He argues, therefore, that the remainder must be returned to him. Finally, Day argues that the court should not reward the state or its agent, the CT Page 5344 Ansonia police department, for failing to safeguard the property that is the subject of this forfeiture proceeding, by allowing the state to succeed in its forfeiture petition where the money and alleged narcotics no longer exist and cannot be examined or tested by Day.
The court finds that the state has met its burden of proving by clear and convincing evidence that the $28,194.63 that was seized from Day constitutes proceeds from the sale or exchange of narcotics in violation of § 21a-278. As to Day's claim that the state has failed to link this money to drug sales, Day had only about $1,900 of reported income within the previous three years, yet he had in his possession on April 9, 1997, a sum of money in excess of $28,000. This is a substantial amount of money for an individual with very little income and very little earning capacity to be toting around. From these facts, the court can reasonably infer that this money came from some other source. Further, the court finds that the officers' testimony, that Day was in possession of a large amount of cocaine that was packaged in a manner consistent with sales, is credible. Based on this evidence, the court is convinced that Day, an individual with almost no legitimate source of income, who was found to be in possession of a large amount of cash as well as a large amount of cocaine, earned that money through the sale or exchange of that narcotic substance. Further, while Day claims that only $3,600 of the $28,194.63 should be forfeited because only $3,600 of cocaine was allegedly seized, § 54-36h (a)(2) provides that all property that the state has proven to be drugs proceeds shall be forfeited; it does not require the state to match the value of the proceeds up with the seized narcotics on a dollar for dollar basis. Accordingly, the court finds that the $28,194.63 constitutes proceeds obtained from the sale or exchange of narcotics in violation, of § 21a-278 and is subject to forfeiture to the state pursuant to § 54-36h (a)(2).
Day next argues that even if the $28,194.63 constitutes proceeds obtained from the sale of narcotics, the money is, nonetheless, not subject to forfeiture because it falls within the statutory exemption contained in § 54-36h (d). Based on Day's interpretation of the statute, property ordinarily subject to forfeiture under § 54-36h (a) is protected from forfeiture under § 54-36h (d), where that property was used or intended to be used for legitimate attorney's fees. Day argues that fees for representation in the instant proceeding amount to $9,400, pursuant to a written fee agreement in which his attorney agreed to accept one third of the amount of the seized property as his fee. He also argues that substantial legal fees have also accrued, which have not yet been paid, for other criminal matters that were once pending in the Derby and Bridgeport Superior Courts.
The state concedes that § 54-36h (d) exempts from forfeiture money CT Page 5345 or property that was intended to be used by its owner to pay legitimate attorney's fees. It argues, however, that the money at issue here should not be exempted. Based on its interpretation of the statute, the owner's intent to use the property to pay attorney's fees must be formed prior to the property being seized, not after. It further argues that Day's claim, which is that he intended to use this money to pay attorney's fees, is disingenuous because prior to trial Day never claimed that he intended to use that money to pay an attorney; in response to interrogatories regarding the intended use of the seized money, Day simply replied that he intended to use the money for everyday expenses.
Section 54-36h (d) provides that: "Notwithstanding the provisions of subsection (a) of this section, no moneys or property used or intended to be used by the owner thereof to pay legitimate attorney's fees in connection with his defense in a criminal prosecution shall be subject to forfeiture under this section.
There is no Connecticut case law that discusses under what circumstances an owner's claim that otherwise forfeitable property was intended to be used for attorney's fees, properly falls within the statutory exception created by § 54-36h (d). This case, therefore, presents the court with an issue of first impression.
While the penalty of forfeiture is not totally foreign to Connecticut law, statutes subjecting an individual's property to forfeiture are strictly construed in order to protect fundamental constitutional rights. State v. Champagne, 206 Conn. 421, 429-30, 538 A.2d 193 (1988). "In applying this rule of construction, however, we must not frustrate the evident design of the legislature." Id., 430. "[I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together. . . . Insofar as possible the separate effect of each individual part or section of an act is made consistent with the whole." (Internal quotation marks omitted.) Ossen v.Wanat, 217 Conn. 313, 320, 585 A.2d 685, cert. denied, 502 U.S. 816,112 S.Ct. 69, 116 L.Ed.2d 43 (1991). The purpose of the drug forfeiture statutes is to disgorge drug dealers of the fruits of their illegal activities. 32 H.R. Proc., Pt. 20, 1989 Sess., p. 6936, remarks of Representative Osler. Accordingly, while certain property is protected from forfeiture under § 54-36h (d), that subsection cannot provide an owner with the wholesale ability to exempt all property subject to forfeiture by simply declaring that the property was intended to be used to pay attorney's fees because such an interpretation would totally eviscerate the effect of § 54-36h (a) and, therefore, contravene the legislative purpose.
In strictly construing and applying this forfeiture statute, as it CT Page 5346 must, the court finds that there are two qualifying conditions that must be met before the court can exempt property from forfeiture pursuant to54-36h (d): 1) the owner must have truly intended to use the money for legitimate attorney's fees; and 2) the fees must have been accrued in connection with the owner's defense in a criminal prosecution. Legitimate means "not spurious or unjustified; genuine." Webster's Encyclopedic Unabridged Dictionary of the English Language (2nd Ed. 1996). The court finds that the property at issue in this case, the $28,194.63, does not fall within the statutory protection afforded by § 54-36h (d) because Day has not met either condition. In order for the attorney's fees to be legitimate, the owner must have truly intended to use the subject property for those fees. Day did not at any time prior to trial make any claim that he intended to use this money for attorney's fees. Day's recent contention, that he intended to use the money for attorney's fees, cannot be credited where he himself had previously stated in response to the state's interrogatories that the money was intended to be used for everyday needs. Further, a forfeiture proceeding is a civil suit in equity. General Statutes § 54-36h (b). Where a party seeks equitable relief, "he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." Bauer v. WasteManagement of Connecticut, Inc., 239 Conn. 515, 525, 686 A.2d 481
(1996). Day cannot now show that his conduct in claiming an exemption for this property was honest because he himself previously stated a contrary intention. A court of equity should not countenance a claim that appears to be made simply for the purpose of avoiding forfeiture under the statute.
While the state has the burden of proving that the property at issue constitutes proceeds from the sale or exchange of narcotics and is subject to forfeiture, once it has done so, the burden of proof then shifts to the owner, who must then show that the statutory protection barring forfeiture is applicable. See, e.g., State v. One 1993 DodgeDaytona, Superior Court, judicial district of New Haven at Meriden, Docket No. 193560 (May 18, 2000, Robinson, J.) (27 Conn.L.Rptr. 205, 206) (parents presented sufficient evidence to rebut presumption that purchase of vehicle, which was subject to forfeiture, was a gift to son, thereby establishing that they owned vehicle and forfeiture of vehicle was therefore barred by 54-36h (c)). This must be so because an owner's intention as to how he intends to use his property is peculiarly within the knowledge of the owner. Even if it is the state's burden to prove that the owner did not intend to use the subject property as he now claims, in this case, the state has met that burden because Day's responses to the interrogatories are clear evidence of Day's intentions and the court is entitled to rely on those responses.
Additionally, while Day claims to have accrued $9,400 in legal fees CT Page 5347 arising from representation in this forfeiture proceeding, § 54-36h
(d) only exempts those fees that arise in connection with the owner's defense in a criminal prosecution. A forfeiture proceeding, however, is a civil in rem proceeding, rather than a criminal proceeding. State v.Connelly, 194 Conn. 589, 592, 483 A.2d 1085 (1984). A proceeding in rem essentially determines "whether the [property] was used in violation of law." (Internal quotation marks omitted.) Id. Such a proceeding is considered to be separate and independent from a criminal action. Id. Accordingly, any attorney's fees incurred as a result of representation in a forfeiture proceeding do not meet the requirements of § 54-36h
(d) because they do not arise in the context of a criminal prosecution.
Moreover, a careful reading of all of the relevant provisions of the statute, as well as a search of its legislative history, reveal that § 54-36h (d) was only intended to protect from forfeiture that property that has not yet been seized by the state, thereby leaving its owner with some means to afford counsel in an underlying criminal prosecution. This exemption was not intended, however, to extend to property that has been seized simultaneously with drugs, incident to a drug sales arrest.
Section 54-36h (b) provides that the state may petition the court to order a forfeiture: "after the seizure of moneys or property subject to forfeiture pursuant to subsection (a). . . ." Thus, pursuant to subsection (b), the state may only seize forfeitable property. Put another way, if property is not forfeitable under the statute, it is not seizable either. Subsection (a) defines that property which is forfeitable. General Statutes § 54-36h (a). Subsection (d), on the other hand, defines that property which is not forfeitable and, accordingly, cannot be reached by the state in the first instance; "property used or intended to be used . . . to pay legitimate attorney's fees. . . ." General Statutes § 54-36h (d). Subsection (d), in exempting certain property from forfeiture, also exempts that property from seizure because only forfeitable property may be seized pursuant to subsection (b). Because subsection (d) places out of the state's reach only that property which it has designated as nonforfeitable property, that subsection therefore contemplates that the owner still has possession of the nonforfeitable property. Accordingly, subsection (d) only exempts property that has not yet been seized by the state.
The legislative history supports this interpretation. It reveals that the legislature intended to protect from forfeiture only that property that is more indirectly or speculatively the proceeds of drug sales, such as, "if . . . [the state] were to go after a dealer and he had $100,000 in the bank, the government could not claim the whole $100,000 as potentially illegal and not give him the use of that." 32 H.R. Proc., Pt. CT Page 5348 20, 1989 Sess., p. 6939, remarks of Representative Tulisano. A different result is mandated, however, where the property at issue is found alongside and seized contemporaneously with the drugs. In that instance, the connection between the property and the drugs is less speculative and, accordingly, that property is less worthy of an inference that it may be property that is not subject to forfeiture. Again, this interpretation is supported by the legislative history of the statute as evidenced by the following legislative colloquy. "If the property that is confiscated in an automobile with drugs or in an apartment where you have half a million dollars in small bills as a part of an arrest, could this be used for a legal defense?" 32 H.R. Proc., supra, pp. 6938-39, question of Representative Fusscas. "[I]n the situation you described, that would not be available. That would be confiscated funds." 32 H.R. Proc., supra, p. 6939, response of Representative Tulisano. Thus, even if Day had intended to use the seized money to pay attorney's fees in connection with his defense for the underlying criminal prosecution, the $28,194.62 at issue in this case would not fall within the protection afforded by54-36h (d) because it was found alongside and was seized with the narcotics. Accordingly, the court finds that the $28,194.63 does not fall within the protections of § 54-36h (d).
 CONCLUSION
The court finds that the state has met its burden of proving by clear and convincing evidence that the currency seized from the respondent constitutes the proceeds of the sale or exchange of narcotics in violation of § 21a-278 and is, therefore, subject to forfeiture pursuant to § 54-36h (a)(2). Because the money was not intended to be used by the owner to pay legitimate attorney's fees for his defense in a criminal prosecution it is not excepted from forfeiture pursuant to § 54-36h (d) Accordingly, the court orders the $28,194.63 forfeited to the state.
Sylvester, J.