**K–W INDUSTRIES, A DIVISION OF ASSOCIATES TECHNOLOGIES, LTD., a corporation, Plaintiff–Appellant,**

v.

**NATIONAL SURETY CORPORATION, Defendant–Appellee.**

No. 86–3778.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1987.

Submission Vacated June 8, 1987.

Resubmitted May 20, 1988.

Decided Aug. 29, 1988.

Alexander (Zander) Blewett, III, Hoyt & Blewett, Great Falls, Mont., for plaintiff-appellant.

Robert J. Phillips, Snavely & Phillips, Missoula, Mont., for defendant-appellee.

Before FLETCHER and NORRIS, Circuit Judges, and LYNCH *, District Judge.

NORRIS, Circuit Judge:

Appellee National Surety Corporation ("National") was the surety on a payment bond executed in compliance with the Miller Act, 40 U.S.C. § 270a, *et seq.*, guaranteeing payment to suppliers of labor and materials for a federal construction project at Fort Peck, Montana. Appellant K–W Industries ("K–W") alleges that after the general contractor refused to pay for materials K–W delivered for use on the Fort Peck project, K–W made a claim against National on the bond for payment. When National allegedly refused to pay the claim, K–W sued National in the United States District Court for the District of Montana.

After K–W and National settled the federal court action, K–W instituted the present action against National in Montana state court. K–W alleges that National acted in bad faith in refusing to pay K–W's claim and in forcing it to bring the federal court action, and seeks compensatory and punitive damages under Montana's unfair insurance claims practices law. Mont. Code Ann. § 33–18–201. After National removed to federal district court on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1441(a), the district court *sua sponte* dismissed the action for lack of subject matter jurisdiction. The court reasoned that although K–W pleaded its claim against National as founded upon state law, the claim was properly characterized as a federal claim predicated on the rights conferred upon K–W by the Miller Act. In essence, the district court determined that Congress intended to limit claimants such as K–W to remedies provided by the Miller Act, thereby preempting the application of Montana's unfair insurance claims practices law to sureties of Miller Act bonds. From this premise it followed that, because federal courts are vested with exclusive jurisdiction over Miller Act claims, 40 U.S.C. § 270b, the district court was required to

* Honorable Eugene F. Lynch, United States District Judge for the Northern District of California, sitting by designation.

dismiss the action. As the district court correctly noted, a state court's lack of subject matter jurisdiction deprives the federal court of removal jurisdiction, which is derivative. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 17, 103 S.Ct. 2841, 2850, 77 L.Ed.2d 420 (1983).[1] K–W appealed.

After the case was argued, we certified, pursuant to Mont.R.App.P. 44, two threshold questions of state law to the Montana Supreme Court for decision. The Montana Supreme Court decided these questions as follows: First, the court rejected National's contention that surety insurance was not covered by Montana's unfair insurance claims practices law, Mont.Code Ann. § 33–18–201. *K–W Indus. v. National Surety Corp.,* 754 P.2d 502 (Mont.1988). Second, the Montana Supreme Court rejected National's contention that Mont.Code Ann. § 28–11–411 limits a surety's liability for tortious conduct under section 33–18–201 to the amount of its bond.[2] *Id.*

Now that the Montana Supreme Court has determined that section 33–18–201 subjects sureties to liability beyond the amount of the bond for unfair insurance claims practices, we must decide whether application of section 33–18–201 law to sureties of Miller Act bonds is preempted by the Miller Act.

National argues that state law subjecting sureties to tort liability for bad faith insurance practices conflicts with the purposes of the Miller Act in that it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[3] *Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). National suggests that the federal purpose that is frustrated is one of protecting sureties of Miller Act bonds from having to "subject[ ] themselves to insurance regulation of the state in which the federal project is located." Appellee's Brief at 9. Noting that "each state has its own insurance regulations," National argues that "the mere fact that a federal project is located within a given state does not subject the Miller Act surety to the full panoply of state regulation." *Id.* As we construe National's argument, it contends that in enacting the Miller Act Congress intended to immunize sureties from any state law liability for conduct relating to the performance of obligations arising out of Miller Act bonds. We are unpersuaded.

The purpose of the Miller Act "is to protect persons supplying materials and la-

---

1. The removal statute was amended in 1986 to provide that for actions commenced in state courts on or after June 19, 1986, "[t]he court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim." Pub.L. No. 99–336, § 3(a), 100 Stat. 637 (codified as amended at 28 U.S.C. § 1441(e)).

2. Mont.Code Ann. § 28–11–411 provides that "[a] surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty."

3. The Supreme Court has outlined three ways in which a federal law may preempt state law: the federal law may do so expressly; it may reflect a Congressional intent to occupy the entire legal field in the area; or the state law may conflict with the federal law, either directly in that it is not possible to comply with both, or indirectly in that the state law is an obstacle to the accomplishment of the federal objective. *See Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984); *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). National does not argue that the Miller Act expressly preempts state law; the Miller Act contains no preemption clause. *See* 40 U.S.C. § 270a *et seq.* Nor does National argue that Congress intended the Miller Act to occupy the entire field of regulating sureties of bonds for federal construction projects. The Act simply requires the posting of a payment bond of a specified amount; it neither regulates the conduct of sureties nor ensures that such conduct remains unregulated. Finally, National does not argue that it is impossible to comply with both the Miller Act and Montana's unfair insurance claims practices law. Rather, National argues that the Montana statute is preempted because it conflicts with the objectives of the Miller Act.

bor for federal projects." [4] *United States ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.,* 750 F.2d 759, 761 (9th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 60, 88 L.Ed.2d 49 (1985). National has pointed to nothing in the Miller Act or in its legislative history to suggest that Congress intended the Act to protect sureties from liability for torts or other violations of state laws or regulations that they may commit in connection with payment bonds executed pursuant to the Act. We see no conflict whatsoever between Montana's bad faith insurance practices law and the purpose of the Miller Act. Indeed, the Congressional purpose of protecting suppliers of goods and services for federal projects is advanced if sureties are deterred by state tort law from bad faith practices in responding to claims on Miller Act payment bonds. We agree with the Tenth Circuit's observation that the Miller Act, like the mechanic's lien it replaces, "is not the exclusive remedy in regard to the obligation which such lien secures," but rather, "is 'separate from and independent of any *in personam* rights ... which the supplier might have against the owner, a contractor, or a subcontractor, by way of a contract or otherwise.'" *United States ex rel. Sunworks Division of Sun Collector Corp. v. Insurance Company of North America,* 695 F.2d 455, 458 (10th Cir.1982) (quoting *In re Scherer Hardware & Supply, Inc.,* 9 B.R. 125, 130 (N.D.Ill.1981)).[5] For the purpose of preemption analysis, we see no reason to distinguish between remedies that a supplier may have against an owner, contractor, or subcontractor as opposed to a surety. The Miller Act simply provides the equivalent of a mechanic's

lien; it does not supplant any other remedies the supplier may have against any party involved in a federal construction project.

National's reliance upon *F.D. Rich Co. v. United States ex rel. Industrial Lumber Company,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), is misplaced. In *F.D. Rich,* the Supreme Court held that a successful plaintiff in a Miller Act case could not recover attorney's fees under a state law authorizing fee awards to prevailing plaintiffs. The rationale of *F.D. Rich* is that remedies available in an action arising under a federal statute such as the Miller Act should be nationally uniform. *Id.* at 126–131, 94 S.Ct. at 2163–2166. Unlike *F.D. Rich,* K–W's claim in this action does not arise under the Miller Act or under any other federal statute; it arises under Montana's unfair insurance practices law. The case is in federal court solely on the basis of diversity jurisdiction. Thus the question involved in *F.D. Rich*—whether a state law remedy for attorney's fees is incorporated into an action for payment on a Miller Act bond—is not involved in this case. K–W's earlier federal court suit against National for payment on the Miller Act bond has long since been settled. Here K–W is not suing on the bond; it is suing in tort for National's alleged bad faith in refusing to pay K–W's claim until after K–W filed suit.[6]

■ In conclusion, we hold that application of Montana's unfair insurance claims practices law to Miller Act sureties is not preempted by the Miller Act. Accordingly, because K–W's action arises under state

---

**4.** Suppliers of material on construction projects ordinarily acquire a mechanic's lien on the real property involved to secure payment. Because such a lien cannot attach to federal property, the Miller Act's bond requirement was designed to substitute for this common law remedy. *See F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703 (1974). The Miller Act requires a contractor for a federal construction project to furnish a payment bond of a statutorily specified amount to secure payment for all suppliers of labor and material. 40 U.S.C. § 270a(a)(2).

**5.** In *Sunworks,* the Tenth Circuit held that a supplier could pursue an action in quantum meruit against a general contractor regardless of the availability of a Miller Act remedy against the contractor's surety. 695 F.2d at 458.

**6.** National's reliance on *United States ex rel. General Electric v. Minority Electric Company,* 537 F.Supp. 1018 (S.D.Ga.1982), is similarly misplaced. In refusing to incorporate and apply Georgia law in a suit for payment on a Miller Act bond, the court specifically noted that the plaintiff had not attempted to plead a state law cause of action. *Id.* at 1021.

**644**

law, not under the Miller Act, the Montana state court in which this action was originally filed had subject matter jurisdiction. The district court thus erred in dismissing the action for lack of removal jurisdiction.

REVERSED.