CITY OF BRIDGEPORT *v.* ALLAN C. DEBEK, ADMINISTRATOR (ESTATE OF ANTHONY E. DEBEK), ET AL.
(13454)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 6, 1988—decision released February 21, 1989

*Ira B. Charmoy,* with whom, on the brief, was *James M. Nugent,* for the appellants (named defendant et al.).

*Mark S. Shipman,* with whom were *Leonard M. Bieringer, Robert A. Randich* and, on the brief, *Samuel D. Chester,* for the appellee (plaintiff).

PETERS, C. J. Section 11f of the Bankruptcy Act of 1898, then 11 U.S.C. § 29f, provided for the suspension of the operation of any state statute of limitations during the pendency of bankruptcy proceedings.[1] The dispositive issue in this appeal is whether General Stat-

---

[1] Title 11 of the United States Code, § 29f, the Bankruptcy Act of 1898, § 11f, provided: "The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this Act, shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) expiration of thirty days after the filing of such waiver or loss of such right . . . or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur."

Although the Bankruptcy Act of 1898 was replaced by the Bankruptcy Code in 1978, § 403 (a) of the Bankruptcy Reform Act; 11 U.S.C. § 101, preceding note; preserves the applicability of the Bankruptcy Act to these proceedings because the bankruptcy petition in this case was filed in 1975. Section 403 (a) provides that "[a] case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties . . . shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted."

utes § 12-175[2] is a statute of limitations for the purposes of § 11f.

The plaintiff, the city of Bridgeport, commenced this tax lien foreclosure action in October, 1981, in order to foreclose tax liens filed in the period from 1968 to 1981 for municipal real property taxes for property on the Bridgeport grand lists for the years 1966 to 1979. On April 22, 1987, the trial court granted in part the plaintiff's motion for summary judgment with regard to the liens filed from 1972 to 1981. On January 11, 1988, the trial court found that the liens filed from 1968 to 1971 were also valid and, therefore, denied the defendants' motion to dismiss the action. On January 12, 1988, the trial court rendered a judgment of strict foreclosure and found that the total due for all the tax liens was $1,270,622.26. The defendants filed this appeal in the Appellate Court on January 29, 1988. We transferred it here pursuant to Practice Book § 4023. We find no error.

The underlying facts are not in dispute. Anthony E. Debek owned real property located at 1315-1357 Main Street in Bridgeport on which no municipal real estate taxes have been paid since June, 1967. Tax liens were filed with respect to these delinquencies each year. An involuntary bankruptcy action was filed against Debek on June 6, 1975. Debek died shortly thereafter and his son, the defendant Allan C. Debek, was appointed administrator of his estate. On October 1, 1981, the United States Bankruptcy Court granted the plaintiff

---

[2] General Statutes (Rev. to 1981) § 12-175 provides in pertinent part: "[A]ny tax lien upon private property which has been recorded in the land records of any town for more than ten years shall be invalid, and such property shall be free from the encumbrance of such lien, unless an action of foreclosure has been commenced during such period of ten years and a notice of lis pendens filed for record, and the town clerk shall, if no such notice has been filed, upon the request of any interested person, discharge such lien of record by noting on the margin of such record the words, 'Discharged by operation of law.'"

relief from the automatic stay of other court proceedings that had been imposed upon the bankrupt estate.

The plaintiff thereupon instituted an action to foreclose the tax liens filed for the years 1966 to 1981 against the defendants Allan C. Debek, Marlene Debek, Todd J. Debek and Margaret Debek, and other parties not involved in the present appeal. On October 30, 1981, the plaintiff delivered the foreclosure complaint and summons to a deputy sheriff, who served each of the defendants involved in this appeal on November 11, 1981. The sheriff failed to make timely service on some defendants not involved in this appeal. None of the defendants filed a motion to dismiss because of insufficiency of service within thirty days of filing an appearance in the case.

The trial court granted the plaintiff's motions for summary judgment over the defendants' objection that the ten year statute of limitations contained in General Statutes § 12-175 barred this action. The court concluded, furthermore, that the sheriff's delay in serving some of the parties originally named in the complaint had not deprived the court of subject matter jurisdiction.

The defendants raise four claims of error.[3] They claim that the trial court erred: (1) in ruling that only those parties not served within the requisite time period had standing to raise a claim of insufficient service of process; (2) in concluding that General Statutes § 12-175 is a statute of limitations whose operation may be extended; (3) in determining that bankruptcy law suspended the operation of the statute of limitations; and (4) consequently in determining that the total tax liens due and owing include the liens for 1966 to 1971. We find no error.

---

[3] At oral argument in this court, the defendants withdrew two other claims of error.

## I

We must first consider the defendants' claim that the trial court lacked subject matter jurisdiction to entertain the plaintiff's foreclosure action because of the plaintiff's failure to serve all the defendants within fifteen days as required by General Statutes § 52-592. The trial court held that the defective service of process in this case implicated only the court's in personam jurisdiction, and thus that the defendants who had been properly served could not prevail on their belated attempt to raise defective service as a defense. Only the defendants who were properly served are parties to this appeal.

The resolution of this issue presents no factual issues. The record fully substantiates the untimely service on some of the defendants, and the complaint about this defect by the remaining defendants, whose own service was entirely proper.[4]

The only issue therefore is whether the trial court correctly concluded that the sheriff's failure to effect proper service on some defendants did not deprive the court of subject matter jurisdiction. We agree with the trial court. Our precedents make it abundantly clear that, except in the special circumstances of administrative appeals, defects in process do not deprive a court of subject matter jurisdiction. Only last year we reiterated that " '[j]urisdiction over the person, jurisdiction over the subject-matter, and jurisdiction to render the particular judgment are three separate elements of the jurisdiction of a court. . . . Facts showing the service of process in time, form, and manner

---

[4] Practice Book § 144 provides: "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss . . . within the time provided by Sec. 142 [within thirty days of the filing of an appearance]."

sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction *over the person.*'" (Emphasis added.) *Castro* v. *Viera,* 207 Conn. 420, 433–34, 541 A.2d 1216 (1988). The Superior Court lacks subject matter jurisdiction only if it has no competence to entertain the action before it. *Meinket* v. *Levinson,* 193 Conn. 110, 115, 474 A.2d 454 (1984); *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* 191 Conn. 555, 559, 468 A.2d 1230 (1983); *Monroe* v. *Monroe,* 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979); 1 Restatement (Second), Judgments (1982) § 11. "Unlike subject matter jurisdiction . . . personal jurisdiction may be created through consent or waiver." *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 39, 495 A.2d 1034 (1985); see also *Insurance Corporation of Ireland* v. *Compagnie des Bauxites,* 456 U.S. 694, 703–704, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982). The trial court therefore had the jurisdiction to consider this case on its merits.

II

The defendants' remaining three claims are actually three aspects of a single claim that the tax liens filed in the years 1968 to 1971 are invalid and unenforceable because no foreclosure action was brought within the ten year limit stipulated by General Statutes § 12-175.[5] The plaintiff and the defendants disagree about whether, pursuant to § 11f of the Bankruptcy Act, Anthony Debek's intervening bankruptcy operated

[5] Although the foreclosure judgment covered other years as well, only the tax liens filed prior to 1971, for the grand lists of 1966 to 1969, are at issue in the present appeal. These tax liens were filed on April 1, 1968, April 1, 1969, April 1, 1970, March 30, 1971, and June 30, 1971, respectively. All of them were timely filed before the initiation of bankruptcy proceedings. The defendants' claim of error with regard to "liens filed for 1966-1971" raises no independent questions of law with regard to these tax assessments per se.

to toll the running of this statute. We agree with the plaintiff that the statute was tolled by the Bankruptcy Act.

The defendants contend that § 11f did not toll the running of the time period allowed by § 12-175 because, in their view, the time limitation that our statute provides is not a statute of limitations. Under § 12-175, "any tax lien . . . recorded . . . for more than ten years shall be invalid . . . unless an action of foreclosure has been commenced during such period of ten years . . . ." The defendants urge us to construe this language as manifesting the intention of our legislature to establish time constraints that operate as a condition on the enforcement of a substantive right, as a limitation on the underlying liability, rather than as a statute of limitations that merely affects the applicable remedy. They claim that § 12-175 is analogous to other statutes whose time constraints we have construed as a limitation on the underlying liability, such as our mechanic's lien statute, General Statutes § 49-39;[6] *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 543, 325 A.2d 259 (1973); see *Matter of Reardon,* 10 Bankr. 697, 700 (D. Conn. 1981); and our

---

[6] "[General Statutes] Sec. 49-39. TIME LIMITATION OF MECHANIC'S LIEN. ACTION TO FORECLOSE PRIVILEGED. A mechanic's lien shall not continue in force for a longer period than one year after the lien has been perfected, unless the party claiming the lien commences an action to foreclose it, by complaint, cross-complaint or counterclaim, and records a notice of lis pendens in evidence thereof on the land records of the town in which the lien is recorded within one year from the date the lien was recorded or within sixty days of any final disposition of an appeal taken in accordance with section 49-35c, whichever is later. Each such lien, after the expiration of the one-year period or sixty-day period, as the case may be, without action commenced and notice thereof filed as aforesaid; shall be invalid and discharged as a matter of law. An action to foreclose a mechanic's lien shall be privileged in respect to assignment for trial. With respect to any such lien which was validated in accordance with the provisions of section 49-37a, the one-year period or sixty-day period, as the case may be, shall toll from the date of the validation."

wrongful death statute, General Statutes § 52-555.[7] *Ecker* v. *West Hartford,* 205 Conn. 219, 232, 530 A.2d 1056 (1987). The defendants also note that a federal court has construed a time limitation in the Washington mechanic's lien statute to fall outside of the suspension provisions of § 11f. *In re Warren,* 192 F. Sup. 801, 803 (W.D. Wash. 1961).

The defendants may well be right that, for some purposes, § 12-175 is so intimately connected with the statutory creation of municipal tax liens in General Statutes § 12-172[8] that the time limitations it contains should be construed as substantive limitations on the rights conferred rather than as procedural limitations on available remedies. If that is the appropriate characterization of the statute, then as "a limitation upon the

---

[7] General Statutes § 52-555 provides in relevant part: "In any action surviving to or brought by an executor or administrator for injuries resulting in death . . . such executor or administrator may recover from the party legally at fault for such injuries just damages . . . provided no action shall be brought . . . but within two years from the date when the injury is first sustained or discovered . . . . "

[8] General Statutes § 12-172, which provides for the creation of municipal tax liens, states: "TAX LIENS; PRECEDENCE; ENFORCEMENT. The interest of each person in each item of real estate, which has been legally set in his assessment list, shall be subject to a lien for that part of his taxes laid upon the valuation of such interest, as found in such list when finally completed, as such part may be increased by interest, fees and charges. Such lien, unless otherwise specially provided by law, shall exist from the first day of October or other assessment date of the municipality in the year previous to that in which such tax, or the first instalment thereof, became due until one year after such tax or first instalment thereof became due and, during its existence, shall take precedence of all transfers and encumbrances in any manner affecting such interest in such item, or any part of it. Such lien, during its existence, may be enforced by levy and sale of such real estate if such person has complete title thereto or of his interest in such real estate if he does not have complete title thereto. No sale of real estate for taxes or foreclosure of any lien shall divest the estate sold of any existing lien for other taxes."

The right only to continue the existence of a lien created pursuant to § 12-172 beyond one year after such tax or first installment becomes due is provided by General Statutes § 12-175.

right of action it must be strictly complied with." *DeMartino* v. *Siemon*, 90 Conn. 527, 529, 97 A. 765 (1916). The question before us, however, is not what effect to give to § 12-175 under ordinary commercial circumstances. We must decide instead how this statute fits into the prescriptions of the federal law of bankruptcy.

Our analysis of this issue must start with the recognition that, because of the plenary power over bankruptcy that the United States constitution grants to the federal government; U.S. Const., art. 1, § 8, cl. 4;[9] Congress unquestionably had the power to provide that the filing of a bankruptcy petition tolls time limitations such as those provided by § 12-175. To the extent a state statute and the Bankruptcy Act conflict, the latter governs. *Marine Harbor Properties, Inc.* v. *Manufacturers Trust Co.*, 317 U.S. 78, 83, 63 S. Ct. 93, 87 L. Ed. 64, reh. denied, 317 U.S. 710, 63 S. Ct. 254, 87 L. Ed. 566 (1942); *Kalb* v. *Feuerstein*, 308 U.S. 433, 439, 60 S. Ct. 343, 84 L. Ed. 370 (1940); *West Coast Life Ins. Co.* v. *Merced Irrigation District*, 114 F.2d 654, 664 (9th Cir. 1940).

The question therefore becomes whether the Congress, in enacting § 11f, which provides that the filing of a petition in bankruptcy suspends the operation "of any statute of limitations of . . . any State," intended to encompass time limitations such as those contained in § 12-175. In order to determine the intent of Congress, we look to the statutory language itself, to see whether it yields a plain and unambiguous answer; if the statute does not on its face lead to a definitive resolution, we turn for guidance to the purpose that the statute was intended to serve, and to the role of this statute within the overall statutory scheme of the Bank-

---

[9] The constitution of the United States, article first, § 8, clause 4, provides in part: "To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States . . . ."

ruptcy Act. *Nicotra Wieler Investment Management, Inc.* v. *Grower,* 207 Conn. 441, 451, 541 A.2d 1226 (1988); *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988).

Examination of the relevant language of the Bankruptcy Act discloses that, although § 1 of the act provides many definitions, the phrase "statute of limitations" that appears in § 11f is not defined either there or elsewhere in the act. As a point of departure, we may therefore assume that the Congress intended to use the phrase as it is normally defined. Black's Law Dictionary states that a "statute of limitations" is "[a] statute prescribing limitations to the right of action on certain described causes of action . . . that is, declaring that no suit shall be maintained on such causes of action . . . unless brought within a specified period of time after the right accrued. Statutes of limitation are statutes of repose, and are such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or within which certain rights may be enforced." Black's Law Dictionary (5th Ed. 1979). On its face, § 12-175's limitations on the right to foreclose tax liens appear to satisfy this definition, which makes no distinction between substantive and procedural limitations on rights of recovery.

A broad definition of "statute of limitations," for bankruptcy purposes, is consistent, furthermore, with the purpose that § 11f was intended to serve. The suspension of the running of applicable statutes of limitations is an essential counterpart of the automatic stay, which is " 'one of the fundamental debtor protections provided by the bankruptcy laws.' " *Midlantic National Bank* v. *New Jersey Department of Environmental Protection,* 474 U.S. 494, 503, 106 S. Ct. 755, 88 L. Ed. 2d 859, reh. denied, 457 U.S. 1090, 106 S. Ct. 1482, 89 L. Ed. 2d 736 (1986); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), reprinted in L. King, Collier

on Bankruptcy (15th Ed.), app. 2, pp. 341–42. Under Bankruptcy Rule 601 (a), enacted to implement § 148 of the Bankruptcy Act, the filing of a petition in bankruptcy operates as "a stay of any act or the commencement or continuation of any court proceeding" to enforce a lien against the bankrupt.[10] *N.L.R.B.* v. *Bildisco & Bildisco,* 465 U.S. 513, 530, 104 S. Ct. 1188, 79 L. Ed. 2d 482 (1983). The stay provides a "sanctuary from the jungle of creditors' pursuit of their individualistic collection efforts" in order to safeguard "[t]he primary function of the bankruptcy system . . . to continue the law-based orderliness of the open credit economy in the event of a debtor's inability or unwillingness generally to pay his debts." Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess., Pts. I and II (1973), reprinted in L. King, supra, app. 2, c. 3, p. 71. The Bankruptcy Act is rooted in equitable principles. *Bank of Marin* v. *England,* 385 U.S. 99, 103, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966); *Pepper* v. *Litton,* 308 U.S. 295, 304–305, 60 S. Ct. 238, 84 L. Ed. 2d 281 (1939). It is likely that the Congress, having provided the debtor with a stay to protect his interests, would have intended the creditor to have coextensive rights to revive causes of action that were unenforceable while the bankruptcy stay was in effect. The defendants in this case have not suggested that, once bankruptcy intervened in 1975, the plaintiff would have been able to foreclose on its tax liens at any time before October 1, 1981, when, at its request, the stay was lifted by action of the Bank-

---

[10] Rules of Bankruptcy Procedure (1976), Rule 601 (a) provides in pertinent part: "The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy . . . ."

ruptcy Court.[11] In these circumstances, it is only equi-table to construe "statute of limitations" in § 11f to encompass the provisions of § 12-175.

A broad construction of § 11f finds further support in the legislative history of the enactment of § 108 of the Bankruptcy Code, the 1978 successor to § 11f of the Bankruptcy Act.[12] Although the new section is on its face more expansive than the old, the drafters appar-ently believed that the phrase "statute of limitations" as used in the Bankruptcy Act had always referred to statutes that limit the right to bring an action gener-ally, as opposed to a narrowly defined class of purely procedural limitations on actions. The Commission on the Bankruptcy Laws of the United States in comments to the proposed section (then numbered § 4-102 [b])[13] stated that the section "is derived from § 11f of the present Act but reaches to unexpired periods of limi-

[11] The plaintiff pursued the appropriate course of action by filing for relief from the automatic stay in order to foreclose the liens. The city should not have to choose between seeking foreclosure upon tax liens in violation of federal law and foregoing revenues legitimately owed by the bankrupt.

[12] Title 11 of the United States Code (1986 Sup.), § 108 provides in perti-nent part: "(c) Except as provided in § 524 of this title, if applicable non-bankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the peti-tion, then such period does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, or 1301 of this title, as the case may be, with respect to such claim."

[13] Section 4-102 read: "EXTENSIONS FOR CREDITORS. Where by agree-ment, order entered in any proceeding, or other applicable law, a time is fixed for commencing an action on a claim against the debtor that has not expired at the date of the petition under this Act, such time shall be sus-pended until 30 days after the stay of the commencement of an action on such claim under section 4-501 has been terminated or has expired." Com-mission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess., Pt. II, reprinted in L. King, Collier on Bankruptcy (15th Ed.) app. 2, c. 4, p. 68.

tation imposed by agreement or orders entered in other proceedings as well as to those imposed by law . . . . " Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess., Pt. II (1973), reprinted in L. King, supra, app. 2, c. 4, p. 69. Although the drafters commented expressly on the wisdom of extending § 11f of the act to include limitations other than those imposed by law, they apparently perceived no difference between the former language referring to a suspension of a "statute of limitations" and the new language referring to a "time fixed for commencing an action." This perception is reenforced by statements made both in the House of Representatives Report on the proposed code, which describes § 108 (c) as extending "the *statute of limitations* for creditors" (emphasis added); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (1977), reprinted in L. King, supra, app. 2, p. 318; and in the explanations of the compromise bill by House and Senate floor managers which characterize § 108 (c) as "expressly includ[ing] any special suspensions of *statutes of limitations* periods . . . . " (Emphasis added.) The House Debate on Compromise Bill, 124 Cong. Rec. H11109 (daily ed. September 28, 1978), reprinted in L. King, supra, app. 3, c. 9, p. 127.

All the available indicia thus point to an interpretation of the phrase "statute of limitations" in § 11f, as a matter of federal law, as a broad reference to state-enacted time constraints, such as § 12-175, without regard to whether such time constraints might, in other circumstances, be viewed as substantive rather than as procedural. Indeed, we have ourselves, as a matter of nomenclature, recognized a linguistic overlap between substantive limitations and statutes of limitations. For example, in *Diamond National Corporation* v. *Dwelle,* supra, we stated: "Generally, 'limitations on actions . . . are considered procedural or personal

and thus subject to waiver . . . . This is so because it is considered that the limitation merely acts as a bar to a remedy otherwise available. . . . Such is not considered to be the case, however, where a specific limitation is contained in the statute which establishes the remedy. Here the remedy exists only during the prescribed period and not thereafter. . . . In such situations the *Statute of Limitations* is considered substantive . . . . ' " (Emphasis added.) Id., 546–47 (holding statute of limitations in statute creating mechanics' liens substantive), quoting *Matter of Benjamin* v. *State Liquor Authority,* 17 App. Div. 2d 71, 73, 230 N.Y.S.2d 888, rev'd on other grounds, 13 N.Y.2d 227, 195 N.E.2d 889 (1947). As a general matter, as the trial court held, we have defined a statute of limitations as a bar to the maintenance of an action. *Simonelli* v. *Fitzgerald,* 156 Conn. 49, 53, 238 A.2d 418 (1968); *Arnold* v. *Hollister,* 131 Conn. 34, 38, 37 A.2d 695 (1944). The wording of § 12-175 fits within this broad definition because § 12-175 imposes a bar to the maintenance of an action involving tax liens recorded on private property in the land records of the town for more than ten years.

Finally, our conclusion that the phrase "statute of limitations" in § 11f encompasses the limitations upon suit contained in § 12-175 is buttressed by the analogous holdings of courts in other jurisdictions. Other courts have held that debts valid and enforceable at the time of the filing of a bankruptcy petition retain their validity during the course of the bankruptcy proceedings; *In re Berg,* 33 F. Sup. 700, 702 (D. Minn. 1940); and "have held generally that the filing of a petition in bankruptcy excused the taking of further action under state law to enforce liens." *In re Etherton,* 88 F. Sup. 874, 879 n.15 (S.D. Cal. 1950); see also *Martin* v. *Goggin,* 107 Cal. App. 2d 688, 238 P.2d 84 (1951). As the court stated in *In re Etherton,* supra, 879, where

a claimant's only remedy under state law was to foreclose or to sue, "[h]e, having been prevented from doing so by the effect of a federal statute, the statute of limitation has not run even now." *In re Warren,* supra, on which the defendants rely, is distinguishable. That court, noting that § 11f suspends statutes "affecting the debts of a bankrupt," construed the time limitation in the relevant state mechanic's lien statute as affecting only the security for the underlying debt, rather than the enforceability of the debt itself. Id., 804.[14] The trial court's ruling that the plaintiff's cause of action was not time-barred was therefore correct.

There is no error.

In this opinion the other justices concurred.

---

[14] We note that the defendants in this case have not argued that General Statutes § 12-175 affects only the security for the underlying debt, presumably because of the terms of our municipal tax lien statutes. See footnote 8, supra.