[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ISSUE
Whether defendant's motion to dismiss counts two, three and four should be granted. CT Page 2216
Whether defendant's motion for partial summary judgment as to counts two, three and four should be granted.
BACKGROUND
On October 1, 1991, plaintiff, Blakeslee Arpaia Chapman, Inc., filed a single-count complaint against defendant, United States Fidelity and Guaranty Company. On May 6, 1993, plaintiff filed a four-count amended complaint. Count one of the amended complaint alleges the following facts.
Plaintiff, a subcontractor, entered into an agreement with a general contractor, Campanaro Construction Company (hereinafter "Campanaro") to provide services, labor, materials and equipment for a sewer project involving the towns of East Lyme and Waterford and for the installation of a pipe beneath the Niantic River. On September 22, 1988, defendant, as surety, issued a performance bond and a labor and materials (payment) bond. The bonds named Campanaro as "contractor," USFG as "surety," and the town of East Lyme, and the town's Water and Sewer Commission, as "owner."
In count one, plaintiff alleges that it performed in accordance with its agreement with Campanaro, but, despite written notice to Campanaro and defendant, it has not received payment for the sub-contract balance. Count one further alleges that plaintiff last performed work and supplied materials, labor or equipment to Campanaro on October 5, 1990, and that this action was commenced within one year of that date as required by General Statutes 49-42. Plaintiff seeks the outstanding sub-contract balance, and interest on the balance, reasonable attorney's fees, and costs, all pursuant49-42. Section 49-42 provides payment bond claimants with a right of action. (Amended Complaint, filed May 6, 1993, Count One).
Plaintiff also claims that defendant has violated Connecticut's Unfair Insurance Practices Act, General Statutes38a-815 (Count Two); and Connecticut's Unfair Trade Practices Act, General Statutes 42-110b. (Count Three). Count Four alleges bad faith and a breach of the covenant of good faith and fair dealing.
On May 26, 1993, defendant filed an answer and three CT Page 2217 special defenses. The first special defense claims that plaintiff is precluded from bringing the action because it failed to provide timely notice to defendant as required by General Statutes 49-42a. The second special defense claims that the court lacks subject matter jurisdiction over this matter because the action was not commenced within one year after the day "on which the last of the labor was performed or material was supplied by the Plaintiff, as required by C.G.S.49-42." The third special defense asserts that the court lacks jurisdiction because the action was not commenced within a year after the day on which plaintiff "substantially completed performance under its alleged subcontract, as required by C.G.S. 49-42." Plaintiff filed a reply to defendant's special defenses on June 17, 1993.
On August 26, 1993, defendant filed a motion to dismiss counts two, three and four of plaintiff's complaint. On the same date, defendant moved for partial summary judgment, on the issue of liability, as to counts two, three and four.
Plaintiff filed a memorandum of law in opposition on October 7, 1993, and defendant filed a reply memorandum on December 6, 1993.
DEFENDANT'S MOTION TO DISMISS
Counts two, three and four of plaintiff's complaint allege various statutory and common law violations. Defendant argues that the court lacks subject matter jurisdiction over the claims alleged in counts two, three, and four because plaintiff's exclusive remedy is provided by General Statutes49-42. Plaintiff counters that a motion to dismiss is not the proper procedural vehicle to test the legal sufficiency of plaintiff's complaint.
A motion to dismiss tests whether, on the face of the record, the court hacks jurisdiction. (Citation omitted). Upson v. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). Subject matter jurisdiction is defined as "the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks and citation omitted.) Castro v. Viera,207 Conn. 420, 427, 541 A.2d 1216 (1988). "`A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy.'" (Citation omitted). CT Page 2218 Id., 427. Conversely, a court lacks subject matter jurisdiction only if it has no competence to entertain the action before it." Bridgeport v. Debek, 210 Conn. 175, 180,554 A.2d 728 (1989). A question concerning subject matter jurisdiction may be raised at any time. Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 556, 529 A.2d 666 (1987).
The defendant's motion to dismiss is hereby denied because a claim that General Statutes 49-42 is plaintiff's exclusive remedy is not properly raised on a motion to dismiss.
In Grant v. Bassman, 221 Conn. 465, 604 A.2d 814 (1992), the court addressed the issue of "whether a claim that an injured plaintiff has elected workers' compensation as his exclusive remedy deprives the Superior Court of subject matter jurisdiction over a tort action for personal injury." Id., 471. Defendant had moved to dismiss on the ground that the trial court lacked subject matter jurisdiction over the action because the injured plaintiff had elected workers' compensation as his exclusive remedy; therefore, defendant concluded that the workers' compensation commission retained sole jurisdiction over plaintiff's claims. Id., 470.
The court emphasized, however, that the exclusivity provision of the worker's compensation act "`is not at all a denial of jurisdiction in the Superior Court, as such, but is basically a destruction of an otherwise existent common-law right of action. . . . In other words, there is not a lack of jurisdiction in the court but a want of a cause of action in the plaintiff.'" (Emphasis added by the court.) Id., 472, quoting Fusaro v. Chase Copper Co., 21 Conn. Sup. 240, 243,154 A.2d 138 (1956) (Super.Ct. 1956). Accordingly, the court determined that defendant's exclusivity challenge should have been raised by way of a special defense, and not on a motion to dismiss. Id., 473.
In the present case, counts two, three, and four allege various statutory and common law violations. Defendant moves to dismiss these counts on the ground that the court lacks subject matter jurisdiction over such claims due to the exclusivity of General Statutes 49-42. However, consistent with the reasoning in Grant v. Bassman, supra, defendant's claim that 49-42 is plaintiff's exclusive remedy should have been raised by way of a special defense, and not by way of a CT Page 2219 motion to dismiss. Therefore, the defendant's motion to dismiss is hereby denied.
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
Defendant also filed a motion for partial summary judgment, on the issue of liability, as to counts two, three and four. Defendant argues that there are no disputed issues of fact, and that it is entitled to judgment as a matter of law because General Statutes 49-42 is plaintiff's exclusive remedy, Defendant also contends that Connecticut's Unfair Insurance Trade Practices Act (CUIPA) does not provide a private cause of action, and that CUIPA does not apply to noninsurance contracts such as the bonds at issue. In addition, defendant argues that Connecticut's Unfair Trade Practices Act (CUTPA) does not apply to a 49-42 payment bond claim, and that there is no legal basis for plaintiff's common law claim of bad faith and breach of good faith and fair dealing. Defendant has not attached any affidavits or documentation in support of its motion.
Plaintiff counters that General Statutes 49-42 does not provide the exclusive remedy for a payment bond claimant, that a private right of action exists under CUIPA and CUTPA, and that an insurance company may be held liable for bad faith. In support of its position, plaintiff offers a copy of the payment bond, (Exhibit A), and a document, issued by the State of Connecticut Insurance Department, which certifies that defendant is licensed to transact certain "lines of insurance" in this state, including fidelity and surety insurance. (Exhibit B).
Defendant's reply memorandum merely reasserts its claim that General Statutes 49-42 is the exclusive remedy for payment bond claimants.
STANDARD
"In deciding a motion for summary judgment, the trial court is limited to considering the pleadings, affidavits and other documentary proof submitted by the parties." (Citation omitted). Orticelli v. Powers, 197 Conn. 9, 15, 495 A.2d 1023
(1985). Summary judgment "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the CT Page 2220 moving party is entitled to judgment as a matter of law.'" (Citations omitted.) Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990).
"`[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact. . . .'" (Citation omitted.) Connell v. Colwell, 214 Conn. 242, 246,571 A.2d 116 (1990). "`[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" (Citations omitted.) Id., 246. In addition, "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages." Practice Book 385.
DISCUSSION
As previously discussed, defendant failed to specially plead the exclusivity of 49-42, and improperly raised the issue by way of a motion to dismiss. However, the court may consider this issue on defendant's motion for summary judgment.
"The purpose of requiring affirmative pleading is to apprise the court and the opposing party of the issues to be tried and to prevent concealment of the issues until the trial is underway." Gauvin v. New Haven, 187 Conn. 184, 185,445 A.2d 1 (1982). In this case, defendant's motion for summary judgment, and plaintiff's opposition, address the issue of the exclusivity of 49-42. Accordingly, there has been no pretrial concealment of the issues, and the court will consider the issue of the exclusivity of Connecticut's payment bond statute.
General Statutes 49-41 (a) mandates that:
 Before any contract exceeding twenty-five thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof is awarded to any person
 . . . that person shall furnish to the state or the subdivision a bond in the amount of the contract CT Page 2221 which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person
 . . . . Any such bond furnished shall have as principal the name of the person awarded the contract.
General Statutes 49-42 provides for the enforcement of the right to payment on the bond. This section provides, in pertinent part, that:
 (a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract in respect of which a payment bond is furnished under the provisions of section 49-41 and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which the claim is made, may enforce his right to payment under the bond by serving a notice of claim within one hundred eighty days after the date on which he performed the last of the labor or furnished the last of the material for which the claim is made, on the surety that issued the bond and a copy of the notice on the contractor named as principal in the bond. . . . Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve notice on the claimant denying liability for any unpaid portion of the claim. . . . If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the superior court for such sums and prosecute the action to final execution and judgment. An action to recover on a payment bond under this section shall be privileged with respect to assignment for trial. CT Page 2222
Section 49-42 (a) also provides that the court shall award costs and interest to the prevailing party, and that the court may further award "reasonable attorneys fees to either party if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law." In addition, 49-42 (b) mandates that such "no such suit may be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by the claimant."
I. Whether General Statutes 49-42 Constitutes Plaintiff's Exclusive Remedy.
Section 49-42 does not contain an exclusivity provision, and no Connecticut cases were found that expressly addressed the issue of whether 49-42 provides an exclusive remedy. However, there have been cases in Connecticut in which violations of 49-42, CUIPA, and CUTPA have been alleged in a single complaint.
In Okee Industries, Inc. v. National Grange Mutual Ins. Co., 225 Conn. 367, 623 A.2d 483 (1993), the issue was whether an unpaid subcontractor, seeking to recover on a payment bond, had complied with the notice requirements of 49-42. Id., 368. The court observed that the first count of the complaint alleged that defendants breached their contractual obligations, but that the second count alleged CUIPA and CUTPA violations. Id., 368 n. 2. The court noted that, in the trial court, the subcontractor had conceded that it could not recover on the second count if the first count was barred by a failure to comply with the notice requirements of 49-42. Id. The trial court had granted summary judgment in favor of the surety, finding that the subcontractor had failed to comply with these notice requirements; therefore, the supreme court emphasized that the appeal only addressed the first count of the complaint. Id. Ultimately, the court reversed the trial court and remanded the case for further proceedings. Id., 378.[1]
In Kelvin Corporation v. Foley, 7 Conn. L. Rptr. 64 (July 15, 1992, Lewis, J.), count four of plaintiff's complaint alleged that defendant violated 49-42 by failing to investigate plaintiff's claim on a payment bond, and that defendant's failure to pay the bond constituted a CUTPA CT Page 2223 violation. Defendant filed a motion to strike this count on the ground that an allegation of an unfair trade practice against an insurance carrier must satisfy the requirements of CUIPA, and that plaintiff had failed to allege more than a "single insurance transaction." Id. The court observed that defendant's motion required it to make a legal determination as to whether the underlying transaction alleged in the fourth count related to insurance or not, and that this issue should be decided on a motion for summary judgment, not on a motion to strike.[2]
In the absence of Connecticut case law on the issue of whether 49-42 provides an exclusive remedy, the court has consulted federal case law. Section 49-42 "was patterned after federal legislation, popularly known as the Miller Act; 40 U.S.C. § 270a through 270d." Okee Industries, Inc. v. National Grange Ins. Co., supra, 374. Accordingly, Connecticut courts have "regularly consulted federal precedents to determine the proper scope of our statute." (Citations omitted.) Id. See also, O G Industries, Inc. v. New Milford, 29 Conn. App. 783, 788, 617 A.2d 938 (1992).
Several federal courts have determined that the Miller Act is not a claimant's exclusive remedy. See, e.g., K-W Industries v. National Surety Corporation, 855 F.2d 640 (9th Cir. 1988); United States for the Benefit of Ehmcke Sheet Metal v. Wausau, 755 F. Sup. 906 (E.D.Cal. 1991).
In K-W Industries v. National Surety Corporation, K-W, a claimant on a payment bond executed in compliance with the Miller Act, commenced an action in federal court seeking payment from National Surety Corporation, the surety on the bond. Id., 641. The parties settled the initial suit; however, K-W instituted another action against National, alleging bad faith and seeking damages under Montana's unfair insurance claims practices law. Id., 641. The issue before the court was whether the Miller Act preempted the application of Montana's unfair insurance claims practices law. Id., 643.[3]
The court noted that the purpose of the Miller Act was to protect individuals supplying labor and materials for federal projects, and it observed that National had not demonstrated anything from the Miller Act, or from its legislative history, to suggest that Congress "intended the Act to protect sureties CT Page 2224 from liability for torts or other violations of state laws or regulations that they may commit in connection with payment bonds executed pursuant to the Act." (Emphasis provided). Id., 642-43. The court did not perceive any conflict between Montana's bad faith insurance practices law and the purpose of the Miller Act, and it stated that "the Congressional purpose of protecting suppliers of goods and services for federal projects is advanced if sureties are deterred by state tort law from bad faith practices in responding to claims on Miller Act payment bonds." (Emphasis provided). Id., 643. The court emphasized that K-W was not suing on the bond, but was suing in tort based on National's bad faith in refusing to pay the claim until after K-W had filed suit, and it held that the Miller Act did not preempt the application of Montana's unfair insurance claims law. Id. Contra, United States for Pensacola Construction Co. v. St. Paul Fire and Marine Insurance Company, 710 F. Sup. 638, 640 (W.D.La. 1989) (court criticizes K-W Industries case, observing that "[i]t would be illogical for Congress to give exclusive jurisdiction" to federal courts over the Miller Act "and then to expect them to follow state law in interpreting it.")
In United States for the Benefit of Ehmcke Sheet Metal v. Wausau, supra, a subcontractor on a federal government construction project brought suit against the prime contractor and against the prime contractor's surety. Id., 907. The action against the surety was based on the surety bond and for breach of the covenant of good faith and fair dealing. Id. Initially, the court noted that the Miller Act did not preempt the state law claim. Id., 909. The court observed that the Ninth Circuit had concluded "that the Miller Act does not exclude state law claims against sureties for conduct relating to the performance of obligations arising out of Miller Acts bonds." Id., citing K-W Industries v. National Surety Corporation, supra.
In Ehmcke, the court determined that California substantive law would determine whether a subcontractor could maintain a tort claim for breach of the covenant of good faith and fair dealing against the prime contractor's surety. Id., 909. The court examined a California supreme court case, Moradi-Shalal v. Fireman's Fund Insurance Companies, 46 Cal.3d 287,250 Cal.Rptr. 116, 758 P.2d 58 (1988), and it held that the California supreme court would not permit a cause of action by a subcontractor on a Miller Act project against a CT Page 2225 surety for breach of the covenant of good faith and fair dealing. Id., 913.
Based upon the foregoing cases, the court holds that49-42 is not plaintiff's exclusive remedy against a general contractor's surety. However, that the court must look to Connecticut substantive law to determine whether plaintiff's claims under CUIPA, CUTPA, and allegations of bad faith and breach of the covenant of good faith and fair dealing, are maintainable.
II. Whether Plaintiff's CUIPA Claim is Maintainable.
Count two of plaintiff's amended complaint alleges that defendant's conduct violates Connecticut's Unfair Insurance Practices Act, General Statutes 38a-815. Defendant argues that CUIPA does not provide a private right of action. (Defendant's Memorandum in Support, p. 17). In the alternative, defendant maintains that even if CUIPA provides a private right of action, it has no application to performance and payment bonds. (Defendant's Memorandum in Support p. 18).
Although there is a split of authority among Connecticut superior courts as to whether CUIPA provides a private right of action, this issue is currently on appeal before the Connecticut Supreme Court. See Lees v. Middlesex Ins. Co., SC 14670, Supreme Court Pending Cases, reported in Connecticut Law Journal, June 8, 1993, p. vii. This case was assigned for argument before the Connecticut supreme court on February 17, 1994.
However, as noted above, defendant also argues that even if CUIPA does provide a private right of action, it does not apply to performance and payment bonds because such bonds do not constitute policies of insurance.
Plaintiff counters that CUIPA applies because defendant is engaged in the business of insurance, and that it is licensed to transact certain lines of insurance, including "fidelity and surety insurance." (Plaintiff's Memorandum in Opposition, p. 10).
General Statutes 38a-815 provides, in part, that: CT Page 2226
 No person shall engage in this state in any trade practice which is defined in section 38a-816 as, or determined pursuant to sections 38a-817 and 38a-818
to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance
. . . .
Although count two of plaintiff's amended complaint alleges CUIPA violations on the part of defendant, the complaint does not specify which sections allegedly were violated. However, the allegations contained in the second count fall within the ambit of 38a-816 (6), which defines unfair claim settlement practices in the context of insurance policies.
General Statutes 38a-1 (10) defines "insurance" in the following manner:
 "[I]nsurance" means any agreement to pay a sum of money, provide services or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified perils in return for a consideration. In any contract of insurance, an insured shall have an interest which is subject to a risk of loss through destruction or impairment of that interest, which risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration.
"Suretyship" is a contractual relationship "resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default, or miscarriage of another, the principal." 74 Am.Jur.2d, Suretyship, 1, p. 12. "The surety makes a direct promise to perform the obligation in the event the principal obligor fails to perform." First Virginia Bank-Colonial v. Baker,301 S.E.2d 8, 11 (Va. 1983).
"[A]lthough suretyship is sometimes treated as a form of insurance . . . courts and commentators recognize that CT Page 2227 suretyship is different from liability insurance and has a distinct legal history." (Citation omitted.) United States for the Benefit of Ehmcke Sheet Metal v. Wausau, supra, 913. While, in many respects, insurance contracts are similar to surety contracts, "there is a very wide difference between the two kinds of contracts." Meyer v. Building Realty Service Co., 209 Ind. 125, 196 N.E. 250, 253 (1935). For example, a "tripartite relationship is always present in a surety contract, while an insurance contract in itself never creates a tripartite relation analogous to the suretyship relation." Id., 250. See also, Roney Co. v. Federal Insurance Company,674 F.2d 587, 590 (6th Cir. 1982) (surety bond is not a policy of insurance although it is ordinarily construed in a similar fashion).
The distinction between a surety contract and an insurance contract has been characterized as follows:
 First, a contractor does not purchase a performance or payment bond to protect himself from loss. Second, a suretyship involves a third party, the contractor as principal, which creates a basic difference from insurance contracts. Third, the premium on a surety bond is usually paid by the principal although the obligee is the party receiving the protection of the bond. While insurance contracts and suretyships are often viewed as similar, these differences necessitate caution in applying the rules of insurance.
Garco Industrial Equipment Co., Inc. v. Mallory,485 N.E.2d 652, 654 n. 1 (Ind.App. 1 Dist. 1985), citing Cushman, Surety Bonds on Public and Private Construction Projects, 46 A.B.A.J. 649 (1960); Meyer v. Building and Realty Service Co., Inc., supra, 133-34.
In the present case, a labor and materials (payment) bond was issued by defendant, as surety, with Campanaro, as contractor, and the Town of East Lyme, and its Water and Sewer Commission, as owner. (Plaintiff's Memorandum in Opposition, Exhibit A). The court finds that this payment bond is a surety contract, and not a contract of insurance.
The payment bond was furnished for the "protection of persons supplying labor or materials in the prosecution of the CT Page 2228 work provided for in the contract. . . ." General Statutes49-41 (a). The payment bond was not furnished for the protection of the contractor, Campanaro. Pursuant to the bond, defendant is obligated to satisfy payment claims by persons supplying labor or materials to the contractor in the event that the contractor fails to make payment to such individuals. (Plaintiff's Memorandum in Opposition, Exhibit A). Therefore, the court finds that this payment bond is a surety contact, and not a contract of insurance.
A payment bond obtained pursuant to General Statutes49-41 does not fit within the definition of "insurance," nor does it constitute a contract or policy of insurance. Accordingly, the court hereby grants defendant's motion for summary judgment as to count two on the basis that the subject bond is not "insurance" within the meaning of Connecticut's Unfair Insurance Practices Act.
III. Whether Plaintiff's CUTPA Claim is Maintainable.
Count three incorporates the allegations of plaintiff's CUIPA count, and the allegations of count one, plaintiff's49-42 claim, and it alleges that defendant's conduct violates Connecticut's Unfair Trade Practices Act, General Statutes42-110b, et seq. Defendant moves for summary judgment as to count three on the basis that there can be no CUTPA violation absent a CUIPA violation.
Defendant argues that CUIPA is limited to insurance, and that it "does not cover credit arrangements such as performance and payment bonds and letters of credit[,]" therefore, defendant concludes that plaintiff cannot maintain its CUTPA violation. (Defendant's Memorandum in Support, p. 18). The court finds that even if that plaintiff is foreclosed from bringing a CUIPA claim, plaintiff may still bring a CUTPA claim predicated on the 49-42 violations alleged in count one.
The Connecticut supreme court has determined that statutory violations, other than violations of CUIPA, may give rise to a CUTPA cause of action. See, e.g., Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 105, 612 A.2d 1130
(1992) (violations of 36-2241 and federal Truth in Lending Act constitute CUTPA violations); Conaway v. Prestia,191 Conn. 484, 491, 464 A.2d 847 (1983) (CUTPA creates a private, CT Page 2229 cause of action to recover damages based upon violations of certain landlord-tenant statutes). Similarly, the court finds that a violation of 49-42 may give rise to a CUTPA claim.
General Statutes 42-110b(a) provides that "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110g(a) further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section42-110b, may bring an action to recover actual damages."
In determining whether a practice violates CUPTA, [CUTPA] Connecticut courts assess the following:
 (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers[,] [(competitors or other businessmen.)]
(Citations omitted.) Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254, 550 A.2d 1061 (1988).
When construing the provisions of 49-42, Connecticut's supreme court has "applied maxims of strict construction and liberal construction to one and the same statute." Okee Industries, Inc. v. National Grange Mutual Ins. Co., supra, 373. Section 49-42 "is a statutory cause of action that had no antecedents at common law." Id., 372-32. Therefore, "`[t]he statute having created the cause of action and prescribed the procedure, the mode of proceeding is mandatory and must be strictly complied with.'" (Citations omitted.). Id., 373. Accordingly, the court has "relied on the rule of strict construction when the issue was whether the claimant's notice complied with the specific time requirements of the statute." (Citations omitted.) Id., 373.
"On the other hand . . . 49-42 is a remedial statute CT Page 2230 enacted to provide security for workers and materials suppliers unable to avail themselves of the protection of a mechanic's lien." Okee Industries, Inc. v. National Grange Mutual Ins. Co., supra, 373. "Because `[t]he statutory requirement of a bond is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . such statutory provisions are to be liberally construed.'" (Citations omitted). Id. Therefore, the court has "relied on the rule of liberal construction when the issue was the eligibility for statutory coverage of a particular class of subcontractors; or a particular type of supplier of materials." (Citations omitted.) Id., 373-74.
The court has concluded that "if the statute itself imposes specific constraints, we have held these constraints to be mandatory; if the statute leaves room for construction, we have construed its requirements liberally in order to implement the statute's remedial purpose." Okee Industries, Inc. v. National Grange Mutual Ins. Co., supra, 367.
In addition, CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Services Corporation v. New London Motors, Inc., 203 Conn. 342, 354, 525 A.2d 57 (1987), citing General Statutes 42-110b(d).
In view of the remedial aspects contained in both 49-42
and CUTPA, and in light of the liberal construction afforded these statutes, the court finds that plaintiff's CUTPA claim is maintainable. Accordingly, the court hereby denies the defendant's motion for summary judgment as to count three.
IV. Whether Plaintiff's Claim of Breach of the Covenant of Good Faith and Fair Dealing is Maintainable.
Count four of plaintiff's amended complaint alleges that defendant's refusal to pay plaintiff's claim constitutes bad faith and a breach of the covenant of good faith and fair dealing. Defendant moves for summary judgment as to this count on the ground that there is no basis for such a claim because plaintiff and defendant did not have a contractual relationship. Defendant relies exclusively on the case of United States for the Benefit of Ehmcke Sheet Metal v. Wausau, CT Page 2231 supra, to support its contention.
In Ehmcke, a federal district court determined that "the California Supreme Court would not permit a cause of action by a subcontractor on a Miller Act project against the surety for breach of the covenant of good faith and fair dealing." Id., 913. The court, however, reached this conclusion based upon California law, and it emphasized that "California courts repeatedly have stressed that the covenant of good faith and fair dealing arise from a contractual relationship and is limited to the parties in that relationship." Id., 912.
In Connecticut, when deciding whether a party has a right of action as a third party beneficiary, the courts determine whether the intent of the contracting parties was "`that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties.'" (Citations omitted.) Knapp v. New Haven Road Construction Co., 150 Conn. 321, 325, 189 A.2d 386
(1963).
In the present case, the contacting parties, Campanaro, the contractor, and defendant, as surety, executed a bond in accordance with General Statutes 49-41. As discussed previously, the statutory requirement of a bond "is designed to protect and benefit those who furnish materials and labor to the contractor on public work, in that they may be sure of payment of their just claims, without defeat or undue delay . . . ." Okee Industries, Inc. v. National Grange Mutual Ins. Co., supra, 373. In addition, the subject bond expressly provides, in pertinent part, that: "PROVIDED, that beneficiaries or claimants hereunder shall be limited to the subcontractors, and persons, firms, and corporations having a direct contract with the CONTRACTOR, or its subcontractors, or suppliers." The bond further provides that defendant, the surety, is "bound unto . . . all persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the CONTRACT. . . ." (Defendant's Memorandum in Opposition, Exhibit A).
Accordingly, the court finds mat the plaintiff, as a subcontractor, is a third-party beneficiary to the surety contract, and that plaintiff's breach of good faith and fair CT Page 2232 dealing claim is maintainable. Therefore, the court hereby denies defendant's motion for summary judgment as to count four.
CONCLUSION
The defendant's motion to dismiss is denied.
The defendant's motion for summary judgment is granted as to count two, and denied as to counts three and four.
Hurley, J.